## BARRON v. BURNSIDE.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

Argued March 18, 21, 1887. — Decided April 11, 1887.

The statute of Iowa, approved April 6, 1886, c. 76, which requires that every foreign corporation named in it shall, as a condition of obtaining a permit for the transaction of business in Iowa, stipulate that it will not remove into the Federal Court certain suits which it would, by the laws of the United States, have a right to remove, is void, because it makes the right to a permit dependent upon the surrender by the foreign corporation of a privilege secured to it by the Constitution and laws of the United States.

The case of *Home Insurance Co.* v. *Morse*, 20 Wall. 445, approved; and the decision in *Doyle* v. *Continental Insurance Co.*, 94 U. S. 535, explained.

THIS was a writ of error brought by Henry S. Barron to review a judgment of the Supreme Court of the state of Iowa, on a trial on a writ of *habeas-corpus*, remanding him to the custody of George W. Burnside, sheriff of Linn County, Iowa, by whom he was held under a warrant for his arrest issued by a justice of the peace of Linn County, October 5, 1886, for "the crime of knowingly transacting a portion of the business of the Chicago and North-Western Railway Company within the state of Iowa, when such railway company had no valid permit to do business in the state of Iowa, as provided by c. 76 of the laws of the 21st General Assembly of the State of Iowa, approved April 6, 1886, and taking effect September 1, 1886."

The statute in question is entitled "An Act Requiring Foreign Corporations to File their Articles of Incorporation with the Secretary of State, and Imposing Certain Conditions upon such Corporations Transacting Business in this State." The provisions of the Act are as follows:

"SECTION 1. That hereafter any corporation for pecuniary profit other than for carrying on mercantile or manufacturing business organized under the laws of any other state or of any territory of the United States or of any foreign country desiring to transact its business, or to continue the transaction of its business in this state, shall be and hereby is required, on

and after September [first], A.D. 1886 to file with the secretary of state a certified copy of its articles of incorporation duly attested, accompanied by a resolution of its board of directors or stockholders, authorizing the filing thereof and also authorizing service of process to be made upon any of its officers or agents in this state engaged in transacting its business, and requesting the issuance to such corporation of a permit to transact business in this state. Said application to contain a stipulation that said permit shall be subject to each of the provisions of this act. And thereupon the secretary of state shall issue to such corporation a permit in such form as he may prescribe for the general transaction of the business of such corporation. And upon the receipt of such permit such corporation shall be permitted and authorized to conduct and carry on its business in this state. Provided that nothing in this act contained, shall be construed, to prevent any foreign corporations, from buying, selling, and otherwise dealing, in notes, bonds, mortgages, and other securities, or from enforcing the collection of the same, in the federal courts, in the same manner, and to the same extent, as is now authorized by law.

" Sec. 2. No foreign corporation which has not in good faith complied with the provisions of this act, and taken out a permit, shall hereafter be authorized to exercise the power of eminent domain, or exercise any of the rights and privileges conferred upon corporations, until they have so complied herewith and taken out such permit.

" Sec. 3. Any foreign corporation sued or impleaded in any of the courts of this state upon any contract made or executed in this state or to be performed in this state or for any act or omission, public or private, arising, originating, or happening in the state, who shall remove any such cause from such state court into any of the federal courts held or sitting in this state, for the cause that such corporation is a non-resident of this state or a resident of another state than that of the adverse party, or of local prejudice against such corporation, shall thereupon forfeit and render null and void any permit issued or authority granted to such corporation to transact

business in this state; such forfeiture to be determined from the record of removal, and to date from the date of filing of the application on which such removal is affected, and whenever any corporation shall thus forfeit its said permit no new permit shall be issued to it for the space of three months, unless the executive council shall for satisfactory reasons cause it to be issued sooner.

" Sec. 4. Any foreign corporat on that shall carry on its business and transact the s： ce on and after September 1, 1886, in the state of Iowa by its officers, agents, or otherwise, without having complied with this statute, and taken out, and having a valid permit shall forfeit and pay to the state for each and every day in which such business is transacted and carried on the sum of one hundred dollars ($100), to be recovered by suit in any court having jurisdiction. And any agent, officer or employe who shall kno.vingly act or transact such business for such corporation when it has no valid permit as provided herein shall be guilty of a misdemeanor and for each offence shall be fined, not to exceed one hundred dollars ($100) or imprisoned in the county jail not to exceed thirty days and pay all costs of prosecution.

" Sec. 5. All acts and parts of acts inco.sistent with the provisions hereof are hereby repealed; provided, that nothing contained in this act shall relieve any company, corporation, association or partnership from the performance of any duty or obligation now enjoined upon them or required of them or either of them by the laws now in force."

The information on which the warrant of arrest was issued was as follows :

" State of Iowa, ⎱
" Linn  County, ⎰ ss :

" Before C. W. Burton, justice of the peace in and for Rapids township.

" The State of Iowa ⎫
　　　v.　　　　　⎬
" Henry Barron. ⎭

" The defendant is accused of the crime of knowingly transacting a portion of the business of the Chicago and North-

Western Railway Company within the state of Iowa, when such railway company has no valid permit to do business in the state of Iowa, as provided in chapter 76 of the laws of the 21st General Assembly of said State of Iowa, and taking effect September 1, 1886.

" For that the said defendant, on the 5th day of October, 1886, at the city of Cedar Rapids, in the county and State aforesaid, well knowing the Chicago and North-Western Railway Company to be a foreign corporation organized under the laws of Illinois, and not a corporation organized under the laws of Iowa, and well knowing that the said Chicago and North-Western Railway Company was such foreign corporation for pecuniary profit other than for carrying on mercantile or manufacturing business, to wit, for the operating of a line of railroad, and well knowing that said railway company has failed, neglected and refused to file its articles of incorporation with the secretary of state of the State of Iowa, and has neglected and refused to request the issuance to such Chicago and North-Western Railway Company of a permit to transact business in said State of Iowa, and well knowing that said railway company has no permit to do business in said State of Iowa, as required by said chapter 76 of the laws of Iowa, passed by the 21st General Assembly aforesaid, did knowingly act as a locomotive engineer for the transaction of the business of said Chicago and North-Western Railway Company within the State of Iowa, by running a locomotive engine, with a passenger train attached thereto, through the township of Rapids, in the county and state aforesaid, contrary to law, and the statute in such case made and provided.

J. H. PRESTON.

" Subscribed and sworn to by J. H. Preston before me, this 5th day of October, A.D. 1886.

E. C. PRESTON,<br>
*Notary Public in and for Linn County, Iowa.*"

[Notarial Seal.]

Barron, having been arrested, applied to the Supreme Court of the state for a writ of *habeas corpus*, by a petition setting

forth various facts as showing that his imprisonment was illegal, and praying that his petition might be tried before the Supreme Court. The writ was issued, a return was made to it by the sheriff, and the case was heard upon an agreed statement of facts, the only material ones, in the view, taken of the case, being, that the Chicago and North-Western Railway Company was and is an Illinois corporation, operating railroads in Iowa, and claiming to do so under the authority of statutes of that State, and that Barron, " at the time he was arrested, was in the employment of the Chicago and North-Western Railway Company, and engaged as an engineer on a locomotive in running a passenger train, which was made up at Chicago, in the State of Illinois, and was destined to Council Bluffs, in Iowa, and that said train was carrying passengers and the United States mails received at different points in the State of Illinois, and destined to points in the State of Iowa and beyond, and also from points in the State of Iowa to other points in the same state," and that he was arrested while he was engaged in controlling the engine on the train while it was running. It was admitted that the company had not complied with the Iowa statute by taking out the required permit.

On the hearing before the state court it was urged, among other things, that the statute of Iowa is void as an attempt to interfere with the jurisdiction of the federal courts, as established by the Constitution of the United States and acts of Congress. The court upheld the validity of the statute.

*Mr. W. C. Goudy* and *Mr. J. J. Herrick,* for plaintiff in error.

*Mr. A. J. Baker,* Attorney General of Iowa (*Mr. J. H. Sweeney* was with him), for defendant in error.

I. There is no contractual relation between the corporation and the state.

(1) The statutes of Iowa do not authorize a domestic corporation to sell or lease its railroad and property and franchises to a foreign corporation. It may consolidate, as provided by § 1275, Code of Iowa. It may make joint running

arrangements with such foreign corporation, as provided by § 1276. A corporation of a foreign state may extend its road into Iowa. Chapter 128, Laws 1880. A corporation of Iowa may extend its road into an adjoining state. Section 1277, Code. These are all the methods provided by law in Iowa, whereby a railroad corporation of that state, may contract for through transportation with corporations of adjoining states. Section 1300 of Code applies only to corporations of Iowa.

(2) If the sale was made to the Chicago and North-Western Railway under § 1275, then that is an Iowa corporation. *Muller* v. *Dows*, 94 U. S. 444; *Railway Co.* v. *Whitton*, 13 Wall. 270; *Clark* v. *Barnard*, 108 U. S. 436; *Graham* v. *Boston, &c., Railroad Co.*, 118 U. S. 161. The plaintiff in error insists that the sale was made under § 1300, and was not a consolidation. We therefore claim that inasmuch as § 1300 does not apply to sales or leases by or to connecting railroads of other states, therefore the sale was without authority of law, and there is no contractual relation between the railroad company and the state of Iowa. The corporation is in the state by intrusion and not by contract.

II. Even if the sale is authorized, we insist there is no impairment of the obligation of contract by the state. (1) No property right of the railroad is affected, except as a penalty for non-compliance with lease. The penalty is simply a means of enforcement of the law, and if the subject matter of the law is within the powers of the state, then the penalty is a proper means of enforcement. *Attorney General* v. *Bay State Mining Co.*, 99 Mass. 148. (2) There is nothing in the law repugnant to the Constitution of the United States in so far as the subject of control of corporations is concerned. The state has the undoubted right to decide upon what terms and conditions foreign corporations may obtain a domicile of business within the state. *Attorney General* v. *Bay State Mining Co., supra; Bank of Augusta* v. *Earle*, 13 Pet. 519; *Runyan* v. *Costar*, 14 Pet. 122; *Paul* v. *Virginia*, 8 Wall. 168; *Doyle* v. *Insurance Co.*, 94 U. S. 535; *Ducat* v. *Chicago*, 10 Wall. 410; *Phila. Fire Association* v. *New York*, 119 U. S. 110. (3) The

right of control is specially reserved in the laws of Iowa; both in the statutes under which the Iowa corporations were formed, and in the laws in force when the railroad company claims to have purchased. This reserved right of control gives the state the right to "alter, repeal or abrogate" any rights granted by the State. It cannot deprive the company of its property but may resume or alter what the state granted. (4) This law does not deprive the railroad of any of·its property, except as a means of enforcement and this is justifiable. *Attorney General* v. *Bay State Mining Co., supra.* There is no property right in a tribunal, or a particular remedy. So long as there is a competent tribunal and adequate remedy left, there is no impairment of contract. This is elemental. (5) The Chicago and North-Western Railway Co. is subjected to all these reserved powers of control. *a.* It is subject to the provisions of the laws of 1856, 1860, 1870 and 1872, for the reason that the grantor corporation was so subjected. *b.* It is subjected to the reserved powers contained in § 1090, because said section was in force as a law when the Chicago and North-Western Railway Co. claims to have purchased, and the settled rule of law is that the corporation purchasing, whether the purchase is at judicial sale or by contract *inter partes*, takes subject to the law then in force. *Trask* v. *Maguire*, 18 Wall. 391; *Chesapeake & Ohio Railway Company* v. *Miller*, 114 U. S. 188, 189; *Memphis Railroad Company* v. *Commissioners*, 112. U. S. 609; *St. Louis & Iron Mountain Railway Company* v. *Berry*, 113 U. S. 474; *Chicago, Burlington & Quincy Railroad Company* v. *Iowa*, 94 U. S. 155; *Holyoke* v. *Lyman*, 15 Wall. 500; *Sherman* v. *Smith*, 1 Black, 587; *Beer Company* v. *Massachusetts*, 97 U. S. 25; *Railroad Company* v. *Fuller*, 17 Wall. 560.

III. The law in question does not amount to a regulation of commerce within the meaning of the Constitution of the United States. (1) It has been repeatedly held by this court, that it is not every law which may remotely or indirectly affect commerce, that can be construed to amount to a regulation thereof. *State Tax on Railway Gross Receipts*, 15 Wall. 284; *Peik* v. *Railway Company*, 94 U. S. 164; *Munn* v. *Illi-*

*nois*, 94. U. S. 113; *The Jane Gray* v. *The John Frazier*, 21 How. 184; *Osborne* v. *Mobile*, 16 Wall. 479; *Sherlock* y. *Alling*, 93 U. S. 99; *Telegraph Co.* v. *Telegraph Co.*, 96 U. S. 1; *Paul* v. *Virginia*, 8 Wall. 168; *Gilman* v. *Philadelphia*, 3 Wall. 713. In these cases, and in more that might be cited, the laws did in one way or another, and to a greater or less degree, in some directly, and in others indirectly, operate upon commerce, either with foreign nations or among the states; but this court held, they did not amount to a *regulation* of such commerce. (2) The counsel in claiming that the law in question is a regulation of commerce confounds two powers that in their nature and essence are distinctively different, viz: the control of commerce, and the control of corporations. The one is a transaction, the other the agency of the transaction. Over the transaction the powers of the Federal Government are supreme and exclusive. It is not so over the agency. *Munn* v. *Illinois*, and authorities quoted. "The two governments have supreme authority within their respective spheres, and within them neither can interfere with the other." — (Mr. Justice Field.) (3) Over state highways the state has exclusive control. Over national highways the Federal Government has exclusive control. Neither can interfere with the other. The common state and county roads, turnpikes, canals and railroads are state highways. It constructs them and gives them being, and has the right to control them. *Baltimore & Ohio Railroad* v. *Maryland*, 21 Wall. 456. (4) The navigable waters of the nation are national highways, and over them the powers of the general government are supreme and exclusive. *Baltimore & Ohio Railroad* v. *Maryland,* · *supra.* (5) Railroads constructed in territories under charter from Congress are national highways; "but this right passes from the nation to the newly formed state whenever the latter is admitted into the union." The state has the supreme right to say what corporation or persons shall have supervision of these highways within its borders, if any, and upon what terms. (6) The state cannot so control state highways as to prohibit commerce from other states being carried over them. But it may decide as to the *agencies* by which

such highways shall be operated. The former would be a regulation of commerce; the latter not. While it is admitted that the general government for national purposes may take possession and control of the state highways as post roads, and military roads, and commercial highways, it cannot compel one state to permit its highways to be subject to the control of another state; and it matters not whether such control is sought by the sister state directly, or through the agency of corporations created by such sister state. The rule is well settled that a corporation of one state cannot migrate to, and become domiciled in, a sister state, except by the consent of both states. *Thomas* v. *Railroad Co.*, 101 U. S. 84; *Runyan* v. *Coster*, 14 Pet. 122; *Christian Union* v. *Yount*, 101 U. S. 352; *Philadelphia Fire Association* v. *New York*, 119 U. S. 110; *Bank of Augusta* v. *Earle*, and other cases cited. (7) There is a broad field of difference between prohibiting a person, natural or artificial, from bringing goods or passengers into the state, and in prohibiting such person from acquiring control of the highways, on which such goods and passengers are transported. (8) This law does not in any of its terms prohibit the transportation of freight or passengers interstate: its provisions may all be confined to commerce within the state, and to transactions wholly under state control, and do no violence to the language of the law. It is agreed that the Chicago & North-Western Railway is engaged in both state and interstate commerce, and that the train being moved by Barron, plaintiff in error, was engaged in both state and interstate commerce. Counsel say the law, being a unit, cannot be separated. We say their business is not a unit and may be separated. They need not transact both state and interstate commerce by the same train, or by the same employes. The law is beyond question valid, in so far as it applies to business carried on wholly within Iowa. The company must then cease to do *such* business, or be subjected to the penalties of the law.

IV. It is not in violation of the 14th Amendment to the Constitution of the United States. (1) Corporations are not citizens of the United States. *Balt. & Ohio Railroad* v.

*Koontz,* 104 U. S. 5. (2) A corporation of one state is not a *person* within the meaning of the XIVth Amendment, except within the state of its creation. *Philadelphia Fire Association* v. *New York,* 119 U. S. 110. (3) Any *class* of corporations may be singled out from another class, and regulations applied to the whole class is not a denial of equal protection of the law to such *person* within the meaning of the XIVth Amendment. *Chicago, &c., Railway* v. *Iowa,* 94 U. S. 155; *Munn* v. *Illinois,* 94 U. S. 113; and it matters not that the corporation was doing business in the state before the law was enacted. — See last case cited, page 113, and *Doyle* v. *Ins. Co., supra.* The objection that the law deprives the Chicago & North-Western Railway Co. of the right to remove causes to courts of the United States, and that such right is guaranteed to it by the Constitution is fully met in the case of *Doyle* v. *Ins. Co.* heretofore cited. There is no difference in principle in this respect between the Iowa law involved in this case and the Wisconsin law involved in the case cited.

MR. JUSTICE BLATCHFORD, after stating the case as above reported, delivered the opinion of the court.

The statute manifestly applies to the Chicago and North-Western Railway Company as an Illinois corporation. The first section provides, that a foreign corporation, desiring to continue the transaction of its business in Iowa, is required, on and after September 1, 1886, "to file with the secretary of state a certified copy of its articles of incorporation duly attested, accompanied by a resolution of its board of directors or stockholders, authorizing the filing thereof, and also authorizing service of process to be made upon any of its officers or agents in this state engaged in transacting its business, and requesting the issuance to such corporation of a permit to transact business in this state; said application to contain a stipulation that said permit shall be subject to each of the provisions of this act; and thereupon the secretary of state shall issue to such corporation a permit in such form as he may prescribe, for the general transaction of the business of such

corporation; and, upon the receipt of such permit, such corporation shall be permitted and authorized to conduct and carry on its business in this state."

The initial step required is a resolution authorizing the filing of the copy of the articles of incorporation, and authorizing service of process in the manner specified, and requesting the issue of the permit, the application to be accompanied by a stipulation that the permit shall be subject to each of the provisions of the act. This proceeding is a unit. The filing of the articles of incorporation and the provision in regard to service of process are to be authorized by the same resolution which requests the issue of the permit, and this request or application is to contain the stipulation above mentioned. These various things are not separable. They are all indissolubly bound up with the application for a permit, which is to be subject to every provision of the act. The permit cannot be issued unless such a stipulation is given, and the corporation is not to be permitted to carry on its business in the State unless the permit is issued to it and received by it.

Section 3 of the act provides, that, if the permit is issued, and the foreign corporation, being thereafter sued in a court of Iowa, upon a contract made or executed in Iowa, or to be performed in Iowa, or for any act or omission, public or private, arising, originating or happening in Iowa, shall remove the suit from the state court into any Federal court in Iowa, because the corporation is a non-resident of Iowa, or a resident of a state other than the state of the adverse party, or because of local prejudice against the corporation, that fact shall forfeit the permit and render it void, such forfeiture to be determined from the record of removal, and to date from the filing of the application on which the removal is effected.

Section 4 imposes a penalty of $100 a day on the corporation for carrying on its business in Iowa without having complied with the statute, and having a valid permit, and provides that any agent, officer or employe who shall knowingly act, or transact such business, for the corporation, when it has no valid permit, shall be guilty of a misdemeanor, and for each offence shall be fined not to exceed $100, or be imprisoned

in the county jail not to exceed thirty days, and pay all costs of prosecution.

It is apparent that the entire purpose of this statute is to deprive the foreign corporation, in suits such as those mentioned in § 3, of the right conferred upon it by the Constitution and laws of the United States, to remove a suit from the state court into the Federal court, either on the ground of diversity of citizenship or of local prejudice. The statute is not separable into parts. An affirmative provision requiring the filing by a foreign corporation, with the secretary of state, of a copy of its articles of incorporation, and of an authority for the service of process upon a designated officer or agent in the state, might not be an unreasonable or objectionable requirement, if standing alone; but the manner in which, in this statute, the provisions on those subjects are coupled with the application for the permit, and with the stipulation referred to, shows that the real and only object of the statute, and its substantial provision, is the requirement of the stipulation not to remove the suit into the Federal court.

In view of these considerations, the case falls directly within the decision of this court in *Home Insurance Co.* v. *Morse,* 20 Wall. 445. In that case, which was twice argued here, a statute of Wisconsin provided that it should not be lawful for any foreign fire-insurance company to transact any business in Wisconsin unless it should first appoint an attorney in that state, on whom process could be served, by filing a written instrument to that effect, containing an agreement that the company would not remove a suit for trial into the Federal court. The Home Insurance Company, a New York corporation, filed the appointment of an agent containing the following clause : "And said company agrees that suits commenced in the state courts of Wisconsin shall not be removed by the acts of said company into the United States Circuit or Federal courts." A loss having occurred on a policy issued by the company, it was sued in a court of the state. It filed its petition in proper form for the removal of the suit into the Federal court. The state court refused to allow the removal, and, after a trial, gave a judgment for the plaintiff, which was

affirmed by the Supreme Court of Wisconsin. The company brought the case into this court, which held these propositions: *First*, The agreement made by the company was not one which would bind it, without reference to the statute; *Second*, The agreement acquired no validity from the statute. The general proposition was maintained, that agreements in advance to oust the courts of jurisdiction conferred by law, are illegal and void, and that, while the right to remove a suit might be waived, or its exercise omitted, in each recurring case, a party could not bind himself in advance, by an agreement which might be specifically enforced, thus to forfeit his rights at all times and on all occasions, whenever the case might be presented.

In regard to the second question, the proposition laid down was, that the jurisdiction of the Federal courts, under Art. 3, § 2, of the Constitution, depends upon and is regulated by the laws of the United States; that state legislation cannot confer jurisdiction upon the Federal courts, nor limit or restrict the authority given to them by Congress in pursuance of the Constitution; and that a corporation is a citizen of the state by which it is created, and in which its principal place of business is situated, so far as its right to sue and be sued in the Federal courts is concerned, and within the clause of the Constitution extending the jurisdiction of the Federal courts to controversies between citizens of different states. The conclusions of the court were summed up thus: 1st, The Constitution of the United States secures to citizens of another state than that in which suit is brought an absolute right to remove their cases into the Federal court, upon compliance with the terms of the removal statute; 2d, The statute of Wisconsin is an obstruction to this right, is repugnant to the Constitution of the United States and the laws made in pursuance thereof, and is illegal and void; 3d, The agreement of the insurance company derives no support from an unconstitutional statute, and is void, as it would be had no such statute been passed. For these reasons the judgment of the Supreme Court of Wisconsin was reversed, and it was directed that the prayer of the petition for removal should be granted.

The case of *Doyle* v. *Continental Insurance Co.*, 94 U. S. 535, is relied on by the defendant in error. In that case, this court said, that it had carefully reviewed its decision in *Insurance Co.* v. *Morse*, and was satisfied with it. In referring to the second conclusion in *Insurance Co.* v. *Morse*, above recited, namely, that the statute of Wisconsin was repugnant to the Constitution of the United States, and was illegal and void, the court said, in *Doyle* v. *Continental Insurance Co.*, that it referred to that portion of the statute which required a stipulation not to transfer causes to the courts of the United States. In that case, which arose under the same statute of Wisconsin, the foreign insurance company had complied with the statute, and had filed an agreement not to remove suits into the Federal courts, and had received a license to do business in the state. Afterwards, it removed into the Federal court a suit brought against it in a state court of Wisconsin. The state authorities threatening to revoke the license, the company filed a bill in the Circuit Court of the United States, praying for an injunction to restrain the revoking of the license. A temporary injunction was granted. The defendant demurred to the bill, the demurrer was overruled, a decree was entered making the injunction perpetual, and the defendant appealed to this court. This court reversed the decree and dismissed the bill. The point of the decision seems to have been, that, as the State had granted the license, its officers would not be restrained by injunction, by a court of the United States, from withdrawing it. All that there is in the case beyond this, and all that is said in the opinion which appears to be in conflict with the adjudication in *Insurance Co.* v. *Morse*, must be regarded as not in judgment.

In both of the cases referred to, the foreign corporation had made the agreement not to remove into the Federal court suits to be brought against it in the state court. In the present case, no such agreement has been made, but the locomotive engineer is arrested for acting as such in the employment of the corporation, because it has refused to stipulate that it will not remove into the Federal court suits brought against it in the state court, as a condition of obtaining a permit, and conse-

quently has not obtained such permit. Its right, equally with any individual citizen, to remove into the Federal court, under the laws of the United States, such suits as are mentioned in the third section of the Iowa statute, is too firmly established by the decisions of this court to be questioned at this day; and the State of Iowa might as well pass a statute to deprive an individual citizen of another state of his right to remove such suits.

As the Iowa statute makes the right to a permit dependent upon the surrender by the foreign corporation of a privilege secured to it by the Constitution and laws of the United States, the statute requiring the permit must be held to be void.

The question as to the right of a state to impose upon a corporation engaged in interstate commerce the duty of obtaining a permit from the state, as a condition of its right to carry on such commerce, is a question which it is not necessary to decide in this case. In all the cases in which this court has considered the subject of the granting by a state to a foreign corporation of its consent to the transaction of business in the state, it has uniformly asserted that no conditions can be imposed by the state which are repugnant to the Constitution and laws of the United States. *La Fayette Ins. Co.* v. *French,* 18 How. 404, 407; *Ducat* v. *Chicago,* 10 Wall. 410, 415; *Ins. Co.* v. *Morse,* 20 Wall. 445, 456; *St. Clair* v. *Cox,* 106 U. S. 350, 356; *Phila. Fire Assn.* v. *New York,* 119 U. S. 110, 120.

*The judgment of the Supreme Court of Iowa is reversed, and the case is remanded to that court, with an instruction to enter a judgment discharging the plaintiff in error from custody.*