## CHICAGO, M. & ST. P. RY. Co. *v.* BECKER and others.

(*Circuit Court, D. Minnesota.* December Term, 1887.)

1. **REMOVAL OF CAUSES—PENALTY FOR OBTAINING—CONSTITUTIONAL LAW.**

   Minnesota act of March 9, 1885, entitled "An act relating to foreign corporations doing business in this state," provides that in suits or proceedings arising in that state in which a foreign corporation shall be a party, if such corporation shall make application to remove any such suit into a federal court, it shall be liable to certain penalties. *Held*, that the act is repugnant to the constitution of the United States, and void, as being designed to deprive a citizen of another state of the right to sue and be sued in a federal court.

2. **CORPORATIONS—DOMESTIC CHARACTER—LAWS MINN. 1881, CH. 221.**

   The Chicago, Milwaukee & St. Paul Railway Company, a Wisconsin corporation, is not constituted a domestic corporation by Laws Minn. 1881, c. 221, which authorizes that company to construct and operate roads in Minnesota, provided that it shall be deemed a domestic corporation in all proceedings upon causes of action arising in that state; following *Mahoney* v. *Railway Co.*, 21 Fed. Rep. 817.

3. **CONSTITUTIONAL LAW—INTERSTATE COMMERCE—REGULATION OF SWITCHING CHARGES.**

   Railroad service known as "switching" is local, and the charge made for it is not a part of the through rate fixed beforehand, and has no reference to interstate shipment, but may be regulated by a commission appointed under a state act by virtue of the police power of the state.

4. **SAME.**

   If railroad service known as "switching" be an act of interstate commerce, the price to be charged for it may nevertheless be regulated by a commission appointed under a state act, as such regulation would not refer to the carrying of freight outside the limits of the state.[1]

5. **SAME—REGULATION OF SWITCHING CHARGES — COMPULSORY PROCEEDINGS—DUE PROCESS OF LAW.**

   The compelling of a railroad company to comply with an order regulating rates made by a commission appointed under the Minnesota act of March 7, 1887, for regulating common carriers, is a due process of law, and in such a case the company cannot be heard to complain that the act of the commissioners operated to take the property of the company for public uses without process of law.

On Motion for an Injunction to restrain defendants, George L. Becker, Horace Austin, and John L. Gibbs, as the railroad and warehouse commission of the state of Minnesota, from enforcing a certain order directed to the complainants, the Chicago, Milwaukee & St. Paul Railway Company, made by said commission for regulating the rates to be charged for switching in the city of Minneapolis.

*Flandrau, Squires & Cutcheon,* for complainants.

*Moses E. Clapp* and *Geo. P. Flanery,* for defendant.

NELSON, J. This suit is brought by the complainant against the railroad commissioners of the state of Minnesota, and a motion is made for

---

[1]As to what is a regulation of commerce between the states, within the constitutional provision reserving the exclusive right to congress to regulate such commerce, see Pearsen v. Distillery, (Iowa,) 34 N. W. Rep. 1, and note.

an injunction on the bill of complaint and supporting affidavits to restrain the defendants from enforcing an order made by them fixing the maximum charge for certain services rendered in the city of Minneapolis called "switching."

The bill of complaint is as follows, in substance: *First,* it alleges that the complainant is a railway corporation created, organized, and existing by and under the laws of the state of Wisconsin. That said defendants compose and are a body politic, created under an act of the legislature of the state of Minnesota, approved March 7, 1887, and entitled "An act to regulate common carriers, and creating the railroad and warehouse commission of the state of Minnesota, and defining the duties of such commission in relation to common carriers," and that said defendants are vested with all the powers granted by said act, and none other. The bill then sets out that the complainant has constructed and owns a railroad from Chicago to Minneapolis, Minnesota, with many other lines running through other states and territories, and is a common carrier of passengers and freight; that at Minneapolis it is compelled, in the ordinary transaction of its duties and business, to receive and deliver many cars from and to shippers of freight, and from and to other railroads, many of which pass through said city, and are also common carriers; that in the receipt and delivery of such cars it is compelled to move them short and long distances, and take them out of the trains of cars, and put them into other trains of cars destined for other points, and to deliver them to consignees of freight, and receive them from shippers of freight, all of which requires many movements of such cars by the aid and use of locomotive engines, and many men engaged in such service; that such work is know as and called "switching," and is usually performed in and about the yards and terminal grounds of complainant, but in many cases requires such cars to be moved and hauled to considerable distances outside of and beyond such yards and terminal grounds, and over other tracks of complainant and of other railroad companies; that to enable this switching to be properly and satisfactorily performed complainant has built many railroad tracks in and about said city of Minneapolis, and provided many locomotives, and employs many crews of men, and has provided and furnished large yards and terminal grounds, and many other instrumentalities necessary, all of which involve and continually necessitate the expenditure of very large sums of money; that for the performance of this switching work the complainant has always charged a reasonable and fair compensation to those for whom said work was done, to-wit, $1.50 per car, and never charged more than a reasonable and fair compensation therefor; that the said defendants on the seventh day of July, 1887, acting as such railroad and warehouse commissioners of the state of Minnesota, in the exercise of a pretended power and authority claimed by them to be conferred upon this commission by the laws of the state of Minnesota, but, as complainant asserts and avers, without any power, right, authority, or jurisdiction whatever, issued an order which is in the words and figures following; that is to say:

"STATE OF MINNESOTA.

"OFFICE OF WAREHOUSE & RAILROAD COMMISSION.

"ST. PAUL, July 7, 1887.

"*To the Chicago, Milwaukee & St. Paul Railway Company:* Whereas, all railroad companies owning and operating terminal and switching facilities at or within the city of Minneapolis within this state, with the exception of the Chicago, Milwaukee & St. Paul Railway Company, pursuant to subdivision ' D ' of section 8 of an act entitled ' An act to regulate common carriers, and creating the railroad and warehouse commission of the state of Minnesota, and defining the duties of such commission in relation to common carriers,' approved March 7, 1887, have filed with this commission copies of their several schedules of rates and charges for switching cars on their respective tracks at and within said city; and whereas, it appears from the said schedules that the rates and charges made by said companies vary from 25 cents per car for empty cars to two dollars per car for loaded cars; and whereas, said commission, after due and careful inquiry and consideration, do find that each and every charge in excess of one dollar per car for switching within the limits of said city of Minneapolis is unreasonable and excessive compensation for the service performed: now, therefore, it is ordered and determined by this commission, pursuant to the authority in them vested by the aforesaid legislative act, that all such schedules be changed by striking therefrom all charges or rates in excess of one dollar per car for the switching or transfer thereof, and inserting in room of the words and figures stricken out the words ' one dollar,' or the appropriate sign or figure therefor. It is the object and purpose of this order to establish one dollar as the maximum charge for the switching or transfer of any car at or within the limits of said city, without regard to distance, or the kind of goods or merchandise with which the car so switched or transferred may be loaded.

"By order of the commission."

The complainant further alleges that the defendants claim and insist, and will attempt to enforce their claim against the complainant; and that the charges made and fixed by the defendants for these services are utterly inadequate to compensate the complainant for the performance of such switching services. They further allege that they have procured appliances and instrumentalities for this switching work, and that, if said order were enforced, it would amount to a confiscation and destruction of said tracks, appliances, yards, instrumentalities, so procured for the purposes of switching, and would damage this complainant many thousands of dollars; further, that it would involve complainants in numerous lawsuits, and would hinder and obstruct the complainant in the performance of its duties to the public as a common carrier. They also allege that fully three-fourths of all such switching done by the complainant is of cars to be transported to other states, and that this is an act of interstate commerce, subject to the control of congress alone.

A plea to the jurisdiction of this court is interposed by defendants, and an answer has been filed by the commissioners denying substantially all the allegations in complainant's bill.

The plea to the jurisdiction, alleging as a reason for a dismissal of the bill of complaint that the complainant, by virtue of the act of the Minnesota legislature, (Laws 1881, p. 782,) is a domestic corporation, cannot prevail. This court in the case of *Mahoney* v. *Railway Co.*, 21

Fed. Rep. 817, on a motion to remand, considered the act of the legislature referred to, and held that it did not create a domestic corporation, and "that the C., M. & St. P. Ry. Co., which was a Wisconsin corporation, was still one."

The plea is not sustained. But it is urged on the argument, in opposition to the motion for an injunction, that the complainant is a domestic corporation by virtue of the act of the Minnesota legislature approved March 9, 1885. This act applies to all foreign corporations, and is intended to apply to this complainant. The act is entitled "An act relating to foreign corporations doing business in this state." Section 1:

"Where by the general or special laws of this state relating, or in any way appertaining, to any foreign corporation, it is provided, in substance or effect, that, in suits and proceedings upon causes of action arising in this state in which such corporation shall be a party, such corporation shall be deemed to be a domestic corporation, it is hereby provided that, if such corporation shall make application to remove any such suit or proceeding into the United States circuit or district or federal court, it shall be liable to a penalty of not less than one hundred dollars, nor more than ten thousand dollars, for each application so made, and for each offense committed in making such application."

The second section provides that, in addition to the said penalty, such corporation shall forfeit all right to transact business within this state, and shall be liable to a penalty of not less than $1,000, nor more than $10,000, per day for each and every day that it shall do business within this state after such forfeiture. Sections 3 and 4 provide for the issuance of a certificate or permit upon which business may be done, and provide for penalties to be imposed in case such corporation remove any case from the state to the federal court. This applies also to insurance companies. Section 6 reads as follows:

"No foreign corporation now or hereafter doing business in this state shall have, possess, or exercise any right, privileges, or immunities, not possessed by domestic corporations; but, unless otherwise provided by law, shall in all respects be deemed, if it remain in this state for sixty days next ensuing after the passage of this act, to be a domestic corporation, and entitled to all the rights, privileges, and immunities of domestic corporations, subject to all the laws of this state which are now in force, or may hereafter be enacted."

The next section provides penalties for violation of the preceding section; provides for the forfeiture of any license or certificate that has been given to foreign corporations, if they transact any business thereafter; also provides that no foreign corporation shall seek the federal courts in any suit, under penalty of having its license revoked, and being liable to fine, as contained in section 1.

Previous to the passage of this act, the complainant had for years maintained and operated a railway in the state of Minnesota by license, and it had acquired, by consent of the state, property and franchises of existing railroads, and had been required as early as 1872 to connect in the city of St. Paul two of its roads thus obtained as its road in St. Paul, and other roads traversing westwardly to the state line had been purchased with the sanction of the state, and other vast privileges had

been granted. Its charter is obtained from the state of Wisconsin, and there is no contract between the company and this state by virtue of which it derived corporate rights on condition that it became a domestic corporation. Yet by this legislative act of 1885, after it had operated its railway for years in the state of Minnesota, and invested large amounts of money, not merely by tacit consent, but by express legislative sanction, it is declared to be a domestic corporation, as a penalty for remaining and transacting business in the state. While a corporation is a citizen of the state in which it is created, it is not entitled to recognition, as an absolute right, in any other state, and conditions not inconsistent with the constitution of the United States can be imposed by another state which recognizes it; but its right to sue in the federal court depends alone upon the federal constitution, and no state law can restrict it. This is a constitutional privilege,—an absolute right,—and any state law which would limit it, and which provides that it is unlawful for a foreign corporation to seek the federal court in pursuance of the constitutional privilege, is repugnant to that instrument, and is void. The purpose of this state law of 1885 manifestly is to interfere with the jurisdiction of the federal court, and, as a condition of transacting business in Minnesota, it deprives the foreign corporation of its constitutional privilege by declaring it a domestic corporation if it remains in the state 60 days after the passage of the act. The first section of the act announces its purpose, and penalties are fixed in other sections; indeed, in nearly every part of the act the purpose is distinctly expressed to interfere with the jurisdiction of the federal court. It is not possible to separate the statute into parts, and find a section which does not avow that the purpose and object of the act is to prevent foreign corporations transacting business in the state of Minnesota from exercizing a privilege conferred upon them by the constitution and laws of the United States. The act is an attempt to oust the jurisdiction of the federal court, and to compel a foreign corporation, without an election in fact, to become a citizen of the state, and to force it to abandon the benefit contemplated by the federal constitution. This statute falls within the decisions of the United States supreme court in the cases of *Insurance Co.* v. *Morse*, 20 Wall. 445; *Doyle* v. *Insurance Co.*, 94 U. S. 535; *Barron* v. *Burnside*, 121 U. S. 186, 7 Sup. Ct. Rep. 931. The statute makes the right of a foreign corporation doing business in the state dependent upon its consent to forfeit its constitutional privilege. Such a statute is repugnant to the constitution and laws of the United States, and is void.

This brings me to the principal question involved in this controversy. It is claimed by the complainant that the order of the commission set up in the bill is a regulation of interstate commerce, and imposes no obligation to obey it, and consequently the attempted enforcement should be restrained. The supporting affidavits show that the cars switched by the complainant in the majority of cases are loaded with goods and merchandise destined to points outside the limits of the state of Minnesota. The complainant alleges that three-fourths of the traffic is interstate commerce. If this is so, it is not important. The underlying question pre-

sented is, does the order of the state commission regulate interstate commerce? I find no warrant for the claim advanced that it is an interference with, or regulation of, interstate commerce, and encroaches upon the powers of the federal government. It is true that the loaded cars switched contain freight to be transported to other states, or received from other states, as well as local freight for or from points within the state of Minnesota; but unless the switching service is performed by the complainant, and cars are transferred from a shipper's warehouse or mill to be transported out of the state over a line of railway other than its own, no charge is made. The case presented is this: In order to afford facilities to shippers, the complainant has constructed short lines of road, or side-tracks or switches, so called, from its yard or depot or main lines, running over and across the streets and highways to the various mills and manufacturing establishments in the city of Minneapolis; and its switches are so built as to enable it to take cars from the shippers at the mills, and deliver them to other lines of railway, or deliver cars to consignees received by it from other roads. When this service is performed, and the cars are to be transported from the city of Minneapolis over other roads, and when cars coming into that city over other roads are taken by the complainant over its own switches, and delivered to other roads or to consignees, a charge of one dollar and fifty cents per car is exacted for this switching service rendered, which is claimed to be reasonable and just; but if the cars are to be transported over its own line to the point of destination, or come into the city over complainant's main road, the service is free, and this separate and distinct charge, when made, is only for this local switching. This charge is not a part of the through rate fixed and determined beforehand, and has no reference to interstate shipment. The transportation of cars over the switches from the warehouses or mills to the depot, or from the depot to these mills, can be regulated in many respects by the commissioners, and the rate for performing the service fixed by virtue of the police power of the state, in the same manner as the carriage by dray per load or distance is established for the public good. And I see no difference in the principle to be applied in such cases, although, incidentally, they may be connected with interstate commerce. The service is local, and there is nothing upon the face of the order of the commissioners indicating that it is intended to regulate interstate commerce. Even if it is conceded that this carrying of freight over the switches is an act of interstate commerce, it does not necessarily follow that the order of the commission affecting this traffic is in violation of the constitution of the United States. It is not every act that affects such commerce that amounts to a regulation of it; and this order fixing the price per car for service rendered, and to which the order applies, is not related to the contract for carrying the freight outside the limits of the state of Minnesota, and is not a part of it.

It is urged that the charge fixed by the commission is less than the cost of the service rendered, and that the act of the commissioners is a taking of private property for public use without just compensation, and without due process of law. The act of 1887 provides that when the

rates are fixed by the commission, if the company do not obey it within 10 days, proceedings by *mandamus* can be instituted by the commissioners to compel the railroad company to comply with the provisions of the act in regard to posting in their several depots the prices and rates fixed by the commission; and, if such proceeding is not instituted by the commissioners within 10 days, the corporation feeling itself aggrieved thereby may take an appeal to the district court of the state; and when the appeal is taken, and proceedings are brought in the district, it may be proceeded with as a civil action. This is due process of law. The bill and affidavits introduced by complainant tend to show that the rate fixed by the commission is less than the cost of service, and should not be enforced, but the answer of the defendant denies it. A question is thus presented which I shall not determine upon this motion, but leave it until the final hearing.

The motion for a preliminary injunction is denied, and the restraining order vacated.

The case of the St. Paul, Minneapolis & Omaha Railroad Company against the defendants is substantially the same, and the same order will be entered.