McLEAN v. STATE OF MISSISSIPPI ex rel. ROY.

STATE OF MISSISSIPPI ex rel. ROY v. McLEAN.

No. 8739.

Circuit Court of Appeals, Fifth Circuit.
May 12, 1938.

742

Fred H. Montgomery and Ed. C. Brewer, both of Clarksdale, Miss., for appellant and cross-appellee.

Gerald Fitzgerald of Clarksdale, Miss., for appellee and cross-appellant.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Ephriam R. McLean was during 1934 sheriff of Bolivar county, Miss., and had given an official bond payable to the State of Mississippi with United States Fidelity & Guaranty Company as surety. During that year an atrocious murder was committed in the county, without eyewitnesses. The county supervisors employed police officers in Memphis, Tenn., to help discover the murderer. R. L. Roy was suspected, and the prosecuting attorney of Bolivar county had a warrant issued for his arrest which was delivered to McLean as sheriff, but on its face it ran only within the county and was never executed or returned. Five days later the Memphis officers telegraphed the sheriff that Roy was in custody in Shreveport, La., and requested that Roy be brought to Memphis before being questioned. The same day the sheriff at Shreveport telegraphed McLean that Roy would return without extradition papers. McLean, who was making application for formal extradition papers, replied, requesting that Roy be held and promising to be in Shreveport the next day. The sheriff at Shreveport again wired that Roy waived extradition and was ready for him. McLean and two deputies and the prosecuting attorney then went by automobile to Shreveport, took Roy, who in fact did not demand extradition, to Memphis, Tenn., and held him there ten days, McLean testifying that it was unsafe to take him to Mississippi because of threatened mob violence. Roy testifies to brutal "third degree" practices being inflicted on him while in Memphis by the police officers and prosecuting attorney, McLean at times being present and not interfering. Roy was finally taken by McLean into Bolivar county, Miss., and put in jail there, but was soon released because the true murderer was discovered. Roy, a citizen of Louisiana, brought suit in the District Court of the United States for the Northern District of Mississippi upon the official bond of McLean, a citizen and resident of the Northern District of Mississippi, joining

his surety, United States Fidelity & Guaranty Company, a corporation of Maryland but doing business in Mississippi and having a statutory agent' for service resident in said Northern District upon whom service was made. By a special appearance United States Fidelity & Guaranty Company asserted that it was not suable in the Northern District of Mississippi and was discharged. Verdict and judgment went against McLean solely on account of the occurrences in Tennessee. This appeal and· cross-appeal present two questions: Was the surety suable in this venue? Was the sheriff's bond liable for what happened in Tennessee?

United States Fidelity & Guaranty Company was allowed to sign the bond by reason of having qualified under the laws of Mississippi as a foreign guaranty company. These laws, Code of Mississippi of 1930, §§ 5133, 5165, require as a condition of doing business in the State that, among other things, the company shall appoint the commissioner of insurance and his successors "its true and lawful attorney, upon whom all process in any action or legal proceeding against it may be served, [and that process so served] shall be of the same force and validity as if served on the company, and the authority thereof shall continue in force irrevocable so long as any liability of the company remains outstanding in this state." The company by formal directors' resolution expressly agreed to the things required in the statute, and made a formal appointment of the insurance commissioner and his successors to receive service of all legal proceedings against it, which stated: "And said Company does hereby expressly agree that any and all lawful processes against it which may be served upon him shall be deemed valid personal service upon said Company and shall be of the same force and validity as if served upon said Company." These statutes and agreements are said to involve a consent to be sued in Mississippi in the district where the agent for service resides.

 Federal jurisdiction appears. The State of Mississippi, as obligee in the bond, sues for the use of Roy as the Mississippi statutes provide. But Roy is the real plaintiff and his citizenship is what counts, and is diverse from the citizenship of McLean and his surety. But the venue statute, 28 U.S.C.A. § 112, provides, with immaterial exceptions: "No civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." Notwithstanding this positive language, it is well settled that these provisions are not a deprivation of jurisdiction, but merely establish a privilege as to the place in which one may be sued and that the privilege may be waived. In re Moore, 209 U.S. 490, 28 S.Ct. 585, 706, 52 L.Ed. 904, 14 Ann.Cas. 1164. The waiver may occur before or after the suit, and may result from mere failure to object. Ingersoll v. Coram, 211 U.S. 335, 29 S.Ct. 92, 53 L.Ed. 208; Commercial Cas. Ins. Co. v. Consolidated Stone Co., 278 U.S. 177, 49 S. Ct. 98, 73 L.Ed. 252. The breaches of a sheriff's bond will necessarily be local, governed by the local law and proved by local witnesses. The manifest convenience of a local trial strongly argues that the consent to local service was intended to operate as a consent to local suit. Neither the statute nor the consent attempts to limit their effect to suits in the State courts, but apply broadly to all legal proceedings. But as to suits in the federal courts we feel constrained to hold that the provision for local service is not a waiver of venue. A corporation is an "inhabitant" of and "resides" in the State and district of its incorporation, and the fact that it does business elsewhere and there has agents who may be served with process does not affect its venue rights under the federal statute. Seaboard Rice Milling Co. v. Chicago, R. I. & P. R. Co., 270 U.S. 363, 46 S.Ct. 247, 70 L.Ed. 633. Something more is needed to constitute a waiver of them. Prior to 1887 when the statute, Act March 3, 1875, 18 Stat. 470, allowed suit in the district of which the defendant "is an inhabitant *or in which he shall be found*," it was held that a corporation which in order to do business in a State appointed an agent for service thereby "consented to be found" there, and could be sued in a federal court in that State. In re Schollenberger, 96 U. S. 369, 24 L.Ed. 853.

When the words above italicized were omitted by the Act of March 3, 1887, 28 U.S.C.A. 112, it was held otherwise in Southern Pac. Co. v. Denton, 146 U.S. 202, 13 S.Ct. 44, 36 L.Ed. 942, the court saying on·the point of a waiver by complying with the statute of Texas which required both

an agent for service in the State and an agreement not to remove suits to the courts of the United States (page 46): "But that statute requiring the corporation, as a condition precedent to obtaining a permit to do business within the State, to surrender a right and privilege secured to it by the constitution and laws of the United States, was unconstitutional and void, and could give no validity or effect to any agreement or action of the corporation in obedience to its provisions. [Home] Insurance Co. v. Morse, 20 Wall. 445 [22 L.Ed. 365]; Barron v. Burnside, 121 U.S. 186, 7 S.Ct. 931 [30 L.Ed. 915]; Texas Land Co. v. Worsham, 76 Tex. 556, 13 S.W. 384. Moreover, the supposed agreement of the corporation went no further than to stipulate that process might be served on any officer or agent engaged in its business within the state. It did not undertake to declare the corporation to be a citizen of the state, nor (except by the vain attempt to prevent removals into the national courts) to alter the jurisdiction of any court as defined by law. The agreement, if valid, might subject the corporation, after due service on its agent, to the jurisdiction of any appropriate court of the state. Lafayette Ins. Co. v. French, 18 How. 404 [15 L.Ed. 451]. It might likewise have subjected the corporation to the jurisdiction of a circuit court of the United States held within the state, so long as the judiciary acts of the United States allowed it to be sued in the district in which it was found. Ex parte Schollenberger, 96 U.S. 369 [24 L.Ed. 853]; New England Ins. Co. v. Woodworth, 111 U.S. 138, 4 S.Ct. 364 [28 L.Ed. 379]; In re Louisville Underwriters, 134 U.S. 488, 10 S.Ct. 587 [33 L. Ed. 991]. But such an agreement could not, since congress (as held in Shaw v. Quincy Mining Co. [145 U.S. 444, 12 S.. Ct. 935, 36 L.Ed. 768], above cited) has made citizenship in the state, with residence in the district, the sole test of jurisdiction in this class of cases, estop the corporation to set up noncompliance with that test, when sued in a circuit court of the United States."

The first reason above put forth that the State law was unconstitutional and the agreement on that account not binding does not apply here; and it weakens the force of what follows, but we must consider the second reason, deliberately expounded with citation of authority, as the judgment of the Supreme Court that under the present federal statute appointment of an agent

for service under a State statute so requiring does not imply an agreement to waive venue privileges in the courts of the United States. The decision has been relied on in similar holdings in Platt v. Mass. Real-Estate Co., C.C., 103 F. 705; Wolff & Co. v. Choctaw, O. & G. R. Co., C.C., 133 F. 601; Beech-Nut Packing Co. v. P. Lorillard Co., D.C., 287 F. 271 (which cites also In re Keasbey & Mattison Co., 160 U.S. 221, 16 S.Ct. 273, 40 L.Ed. 402, for its language though the question was not there involved); Jones v. Consolidated Wagon Co., D.C., 31 F.2d 383; and Standard Stoker Co. v. Lower, D. C., 46 F.2d 678, 683. Contrary rulings may be found in Patten v. Dodge Mfg. Corporation, D.C., 23 F.2d 852, and O'Donnell v. Slade, D.C., 5 F.Supp. 265, but neither notices the decision in Southern Pac. Co. v. Denton, supra.

■■ The fact that the United States Fidelity & Guaranty Company, is sued along with McLean, a resident of the district, makes no difference. Each defendant has his own venue privileges. The exception made in 28 U.S.C.A. § 113, where defendants reside in different districts of the same State, of course has no application. The prompt objection of the United States Fidelity & Guaranty Company to the venue was properly sustained.

■■ On the second question, we hold that the sheriff's bond is not suable for what happened in the State of Tennessee. All participants in what, according to the testimony of Roy, was a great outrage, are of course personally and individually liable; but the present suit is in the name of the State of Mississippi expressly on the bond and for a breach of it. The bond is conditioned that "The said E. R. McLean as Sheriff shall well and truly perform all the duties of his said office." He is recited to be the duly elected sheriff of Bolivar county, Miss. The state law, like the common law, confines a sheriff's duties to the county in and for which he is elected. The Constitution, §§ 135 and 138, provides for a sheriff for each county. The Code, § 1224, declares that arrest for crimes and offenses may be made by the sheriff or his deputies "within his county." Section 1234 provides, that "If a person commit an offense and be pursued by a sheriff or constable, and escape from the county of the officer, the officer may pursue and apprehend him in any county and take him to the county in which the offense was commit-

ted." Section 3329 makes it a duty of the sheriff to keep the peace "within his county." Section 3315 makes him the executive officer of the circuit and chancery courts "of his county," and section 3331 gives him charge of the courthouse and jail "of his county." We find no duty or authority given outside his county except the pursuit of an escaping offender as above set forth. That duty and authority refers probably to hot pursuit, and not to the tracing down of a suspect days after he has left the county. It may authorize the common practice whereby the sheriff of the county of the offense goes into the county of the arrest and there receives a prisoner from the sheriff of the latter county. However that may be, in speaking of pursuit into other counties the other counties of Mississippi are meant. The State of Mississippi has no power to extend the authority of its sheriffs into another State, and we will not suppose she has made the attempt. Whether hot pursuit can be continued across the State line would appear to be a question of international law, but is not here involved. What is involved is that Roy, having supposedly committed crime in Mississippi, had escaped into Louisiana and was to be taken back to Mississippi. That has been provided for by the Constitution and laws of the United States. The extradition statute, 18 U.S.C.A. §§ 662, 663, gives State sheriffs no duty or function. The Governors of the two States handle the matter, and the prisoner is to be delivered to and returned by a specially appointed agent and not by the State sheriff or a United States marshal. The Mississippi Code, § 4826, accordingly provides for the appointment by the Governor of an agent to receive the prisoner who may employ a sufficient escort and guard acting at the expense of the State. Even though one who is a sheriff should be appointed such agent, he acts not as sheriff under his bond but as special agent to extradite, at least until he has the prisoner in his custody in his own county. When in this case, Mc-Lean, extradition having been waived, went to Louisiana and took charge of Roy by Roy's consent, he did not, because he could not, exert the office of sheriff of Bolivar county, Miss. In Louisiana and again in Tennessee he did not, because he could not, act either virtute or colore officii. He had neither office nor color of office as a Mississippi sheriff while in another State, where Mississippi laws were not of force. Though the cases in Mississippi indicate

that an officer may be held liable on his bond for acts which might elsewhere be held not official, we are satisfied that the surety for the holder of a mere county office is not bound by what his principal may undertake to do in another State. In such other State he is only a private citizen. No case has been found in which recovery has been allowed upon the bond of a county officer whose functions are confined to his county, for acts done in another State. McLean's acts could fall under the protection of his bond only after he held Roy in custody in Mississippi. Kendall v. Aleshire, 28 Neb. 707, 45 N.W. 167, 26 Am. St.Rep. 367; 4 Am.Jur., Arrest, § 19.

The judgment on the cross-appeal is affirmed, and that on the main appeal is reversed and the cause remanded for further consistent proceedings.