BURPEE v. GUGGENHEIM et al.

(District Court, W. D. Washington, N. D.   August 11, 1915.)

No. 5.

1. CONTRACTS ⬅212—PERFORMANCE—REASONABLE TIME.
    Where plaintiff contracted with defendants to invent and manufacture certain machinery for them, and subsequently, upon delay in completion, an extension agreement was entered into under which defendants were to post a certain guaranty, defendants were required to perform such part of the contract within a reasonable time, which would be such time prior to the date fixed for fulfillment of the contract by plaintiff as would enable him to complete it.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 944–955; Dec. Dig. ⬅212.]

2. CONTRACTS ⬅261—BREACH—FAILURE TO PERFORM CONDITION PRECEDENT.
    Where plaintiff agreed to invent and manufacture certain machinery for the defendants, and a supplemental agreement extending the time was made, requiring defendants to post a certain guaranty, on their failure to do so plaintiff could elect to declare the contract ended.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1174–1180; Dec. Dig. ⬅261.]

3. PATENTS ⬅195—AGREEMENT TO ASSIGN.
    Where plaintiff contracted to invent and manufacture certain special machinery for defendants, the contract providing that the defendants should have an interest in the machines or in any patents thereon only when such machines conformed with the contract, and they did not come within the stipulations, either in output capacity or operative cost, the contract further providing that upon such failure it should be deemed ended, there being no provision giving the defendants an interest in any machines, except upon compliance with the stipulations and payment for 15 sets, a conveyance of any letters patent, drawings, etc., from plaintiff being expressly conditioned upon the payment of a royalty, defendants, declining to accept the completed machinery as a compliance with the contract, could claim no property right in it, or in patents covering it.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 272–274; Dec. Dig. ⬅195.]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. PATENTS ☞190—PERSONALTY—JURISDICTION.

Under Judicial Code (Act March 3, 1911, c. 231) § 57, 36 Stat. 1102 (Comp. St. 1913, § 1039), authorizing suits in District Courts to remove any cloud on the title to personal property within the district where the suit is brought, a District Court had jurisdiction to entertain a suit, by one who had contracted to invent and manufacture machinery for absent defendants, against them to remove the cloud on his title to the machinery and patents thereon created by their claims under the contract.

[Ed. Note.—For other cases, see Patents, Dec. Dig. ☞190.]

In Equity. Suit by F. W. Burpee against M. Robert Guggenheim and others. Decree for plaintiff.

Plaintiff seeks to quiet title to certain manufactured machines, patents, application for patent, drawings, patterns, and specifications, in which the defendants, Guggenheim-Lewisohn-Sheffield Syndicate and H. J. Ramsey, successors to the interests of Frederick Lewisohn and M. Robert Guggenheim, claim and assert an ownership and proprietary interest. It appears from the stipulations of the parties and the testimony that the defendant Syndicate owned letters patent No. 666,218, issued to John H. Hanks, for a conical, paraffine, single service, sanitary paper bottle, and engaged the services of plaintiff, a skilled inventor, to invent, design, and construct a complete line of machinery for the manufacture of such paper bottles in quart, pint, and half-pint sizes. The contract contains the following provisions:

"I. The party of the second part [plaintiff] does hereby covenant and agree to and with the party of the first part [Syndicate] to proceed forthwith to endeavor to invent and construct a complete line of machines for the manufacture of the John H. Hanks patent conical paraffine single service paper milk bottles in quart, pint, and half-pint sizes, complete and ready for use, and to invent and construct machines of such effect as to enable the lines of machines to be constructed by him to produce 50,000 paper bottles, quarts, pints, and half-pints, ready for use, per day of 10 hours' work, at a manufacturer's cost of $3.50 per thousand for quarts, the estimated cost being based upon material of the weight and character and of the estimated value and at a labor cost as follows: [Estimated cost follows.]

"II. The party of the second part agrees to furnish all the necessary skilled and common labor, all the necessary tools, machinery, and equipment, and material necessary to enable him to construct such machinery as he may invent for the purposes aforesaid, the skilled labor to be furnished as follows: [Cost of labor follows.]

"III. The party of the first part, in consideration of the services so to be rendered as aforesaid, covenants and agrees to pay to the party of the second part monthly, and upon statements of the actual cost of labor and material to be furnished it as aforesaid by said party of the second part, up to the sum of $10,000 within which sum it is believed by the party of the second part a complete set of machinery for the making of said bottles can be invented and manufactured. In the event that the party of the second part shall successfully invent and manufacture the necessary machinery to produce said paper bottles, then the party of the first part agrees to purchase from Burpee & Letson, Limited, of Bellingham, Wash., 15 complete sets or lines of machinery, exclusive of the first set, for the manufacture of bottles, within a period of two years from and after the date when the first set to be manufactured under this agreement shall be put in successful operation, and to pay the party of the second part, as compensation for his services in the invention and construction of such lines of machinery, a royalty of $2,250 on each of said 15 sets of machinery so to be invented, manufactured, and delivered to it, or in the aggregate the sum of $33,750, it being understood that the right to use the invention to be made by the second party shall in the meantime remain in him.

---

"IV. The party of the second part agrees, as he completes the necessary machinery for the manufacture of said bottles from time to time, to apply for letters patent therefor to the Patent Office of the government of the United States, and if possible to procure the said machines so designed by him to be patented in his own name, the expense to be a part of the cost of construction. Second party further agrees, if so directed by the party of the first part, and at the expense of the party of the first part, to apply for patents on his inventions for the manufacture of said bottles in Canada or elsewhere, it being understood that all expense appertaining thereto shall be paid by the first party.

"V. The party of the second part further covenants and agrees that no machinery shall be manufactured or sold, under the inventions to be made by him under this agreement, save and except to the party of the first part: Provided, always, it shall keep and observe its covenants in this agreement contained. And when the Syndicate, party of the first part, shall have paid to the party of the second part a royalty of $33,750, then the party of the second part shall, on demand of the party of the first part, its executors, administrators, or assigns, convey to the first party, or its nominee, all letters patent for any and all machinery by him invented for the manufacture of said bottles, and shall also deliver up to the said Syndicate all his drawings, patterns, and specifications for the invention and use of such machinery, as well as any letters patent that may be taken out elsewhere, as hereinbefore provided, by the party of the second part.

"VI. It is mutually understood and agreed that the second party shall have one year from the date of this agreement in which to invent, manufacture, construct, and have ready for operation, the necessary machinery for the manufacture of said bottles; and if he is unable to invent and produce such machinery within the period of one year, this contract shall be deemed ended, in which event party of the second part shall not have or assert against the party of the first part any claims of any character whatsoever for any services he may have rendered, or time or money expended in the effort to invent and construct such machinery.

"VII. It is further mutually understood and agreed that, if the party of the second part shall have incurred costs and expenses in the invention and development of machinery necessary to manufacture said bottles in excess of $10,000, he shall be at liberty to exceed that amount, but only at his own proper cost and expense, and for any amount in excess of $10,000 expended by party of the second part the party of the first part shall not be liable.

"VIII. The party of the second part shall use his utmost endeavors, in the invention and manufacture of machinery for the purposes aforesaid, to avoid any conflicts with existing patents devised for the manufacture of paper bottles; and, should any of his inventions be found to conflict with any patented device, second party will use his utmost endeavors to avoid any such conflict, and to produce a line of machinery that may be operated by first party without involving it in litigation with holders of other patents."

Simultaneously with the execution of this agreement a contract was entered into for the manufacture of certain lines of machinery by the plaintiff for the defendants, conditioned upon the success of the plaintiff in inventing the desired machines. After the execution of the above contract it was ascertained that the demonstrations could not be made for $10,000, and it was agreed that the amount to be furnished by the Syndicate for labor and material should be increased to $15,000. It was also agreed that an additional room or building was necessary to plaintiff's plant, in which to place the bottle machinery, and for such purpose an additional room was rented in which to carry on experimental work. Plaintiff expended in the work of inventing the machinery, pursuant to the contract, $15,051.53 paid by the Syndicate, and the further sum of $8.500, which he contributed from his own fund, and the further sum of $1,359.02 on "factory account." Plaintiff failed to invent the machinery within the year capable of producing 50,000 quart, pint, and half-pint bottles ready for use per day of 10 hours, at a manufacturer's cost of $3.50 per 1,000, but did construct a machine that would produce 39,000 per day of 10 hours at a cost of approximately $5 per 1,000. On the 20th of February,

1912, and after the failure to come within the specifications of the contract first named, the parties entered into a supplemental agreement in which it is stipulated (paragraph II):

"The second parties [plaintiff] will proceed with the manufacture of machines for the production of pint and half-pint bottles and complete the same by, approximately, July 1, 1912.

"III. Second parties agree that the machine for the manufacture of quart bottles heretofore constructed, and those to be constructed for the manufacture of pint and half-pint bottles, when completed, shall produce bottles at the rate of 4,000 per hour, with a percentage of defective or spoiled bottles not exceeding 3 per cent., and that the labor cost in the production of bottles by the said line of machines shall not exceed 60 cents per thousand bottles, based upon 10 cents per hour for all factory hands, except the foreman, whose wages are estimated at 50 cents per hour.

"IV. That when the said line of machinery shows said results the same shall be accepted by the party of the first part, and the party of the first part shall thereupon forthwith pay to the parties of the second part the sum of $10,000 and in addition thereto the inventor's royalty of $2,250.

"V. The party of the first part agrees to arrange with the Union Savings & Trust Company of Seattle, Washington, for the guaranty of said Trust Company of the payment of said sum of $10,000 and the said royalty of $2,250, which guaranty shall be required to be furnished the second parties before they shall be required to commence the work of constructing the additional machines; that the payment of said $10,000 and royalty shall be in full for the first complete line of machines, and no percentage of the cost of construction shall be allowed second parties.

"VI. The party of the first part, on receiving a second set of bottle machinery to be ordered later from the parties of the second part, shall pay for the same in accordance with the terms of the original contracts, and shall also at the time they are received pay the second parties in cash an additional sum of $3,500 to cover moneys expended by second parties in inventing and constructing the machines for producing quart bottles in excess of the moneys paid them by the first party.

"VII. This supplemental agreement shall not be construed to modify or change any of the terms or conditions of those certain agreements entered into between the parties hereto under date of July 22, 1910, except that in completing the first line of machines the said second parties are to receive the gross sum of $10,000 and royalty, and are to waive the profits of 15 per cent. on the machinery herein provided for and specified in paragraph IV of the original contract."

The machines designed and constructed by the plaintiff consist of: First, a cutting or stamping machine; second, a body-forming machine; third, a top-cutting, inserting, and printing machine; fourth, a bottom-cutting, inserting, and printing machine; and, fifth, a waxing or paraffining machine. Plaintiff also devised and prepared plans, patterns, drawings, and specifications for such machines. Plaintiff applied for and secured patent No. 1,075,-329, issued to him October 14, 1913, being for paper receptacle making apparatus; patent No. 1,075,546, issued October 14, 1913, to plaintiff, for conveyors; patent No. 1,084,785, issued January 20, 1914 to plaintiff, for cutting and dicing devices; patent No. 1,084,784, issued January 20, 1914, to plaintiff, for cutting and dicing devices; patent No. 1,099,839, issued to plaintiff June 9, 1914, for receptacle forming machine; patent No. 1,099,840, issued to plaintiff June 9, 1914, for coating machine.

On the 19th of September, 1912, execution was issued out of the superior court of the state of Washington for King county, upon a judgment entered against M. Robert Guggenheim, and delivered to the sheriff, who levied upon all the right, title, share, and interest of said M. Robert Guggenheim in the Guggenheim-Lewisohn-Sheffield Syndicate, and in and to the property rights belonging to the Syndicate, together with all the stock, being 2,500 shares, belonging to M. Robert Guggenheim, of the Washington Sanitary Bottle Company, and after notice of sale at public auction this interest was sold to H. J. Ramsey, and bill of sale issued and was recorded in the auditor's office of King county, Wash.

The defendant Syndicate failed to secure the guaranty of the Union Savings & Trust Company of Seattle, or any one else, for the payment of $10,000 and the royalty of $2,250, or at all. The defendant Syndicate, through Mr. Sheffield, agreed with the plaintiff that the guaranty would be posted within 10 days after a conversation had between Sheffield and the plaintiff several days after the execution of the contract, which was on the 20th day of February, 1912. The plaintiff thereupon entered upon the execution of the contract, but on failure to post the guaranty ceased operations, and upon the continued failure of defendant Syndicate to comply with the terms of this contract declared the contracts, with their respective modifications, terminated because of the alleged breaches by the defendant Syndicate, and such election was made prior to the institution of this action.

Hadley, Hadley & Abbott, of Bellingham, Wash., for plaintiff.

Hughes, McMicken, Dovell & Ramsey, of Seattle, Wash., for defendants.

NETERER, District Judge (after stating the facts as above). Plaintiff contends that, under each of the agreements, title to all of the property in dispute was in him, to be divested only by performance of the conditions imposed; that the Syndicate failed to pay the amount agreed to be paid under the first agreement, $15,000, plus the "factory account," and failed to perform, in not posting the guaranty within the time provided for, or at all; and that the breaches on defendants' part relieved plaintiff of further obligation on the contract, and entitled him to cancel it and terminate defendants' rights thereunder.

Defendants assert that no breach has been made of either the original or supplemental contracts, that the $15,000 agreed to be paid for labor and materials was paid, and assert that they had a reasonable time, under the law, to post the guaranty, and that such reasonable time extended over the period intervening between the date of the supplemental agreement and the commencement of this action, and that, even though default was made in posting, the plaintiff waived this default by subsequent negotiations with the defendant and demonstrations looking to a satisfactory resumption of contractual relations.

[1-3] I do not think there is anything in the evidence which justifies the court in saying that the plaintiff has waived any default, if default was made on the part of the defendant. I am also satisfied, from the evidence and stipulations in this case, that there was an understanding between the parties to this action that the item which is known as the "factory account" was to be paid by the defendants. I do not think, however, that it was understood that that item should be included in the $15,000 account, and the $15,051.53 having been paid on account of the labor and material, I do not think that default could be claimed on that score. The fact that the plaintiff may have a cause of action against the defendants for $1,359.02 paid on factory account would not authorize the plaintiff to simply appropriate any property interests that the defendants may have in satisfaction of such a claim. The defendants failed to comply with a material part of the supplemental agreement, in that they failed to post the guaranty as therein provided, or make any tender or offer in court, and this failure has continued for more than three years; and I am satisfied from the evidence that it was agreed that this should be posted within a short time following February 20, 1912. Irrespective of the special

agreement to post within 10 days, the defendants were required to perform this part of the contract within a reasonable time (9 Cyc. 611), and a reasonable time would be such time prior to the fulfillment of the contract, which was July 1, 1912, as would enable the plaintiff to complete the contract. And on failure to post the plaintiff had a right to treat the guaranty as a condition precedent, and on a breach to exercise his right of election to declare the contract ended. 3 Elliott on Contracts, § 2026.

"The breach may consist in the failure to perform a condition precedent. There is a condition precedent, within this principle, where one of two mutual acts must necessarily precede the other and the former act is a condition precedent." 3 Elliott on Contracts, § 2044.

No rights have accrued to the defendants under the supplemental agreement, because they have complied with no part of it. Nothing was done by the plaintiff under the supplemental agreement to which the defendants could claim any interest. All rights which the defendants have, therefore, rest upon the original agreement, by the specifications of which the defendants were only to have interest in the machines or in the patents when they conformed to the stipulations and requirements of the contract. The defendants decline to accept the result of plaintiff's efforts as such compliance. It is agreed that the invention does not come within the stipulations of the contract, either in the manufacture of quantity or in the price of manufacture, and upon such failure, by express stipulations, the contract was to be deemed ended; and there is no provision in any part of the contract giving the defendants an interest in any machines or the product of the plaintiff, or any of the efforts of his labor, except upon the completion of the machines within the stipulations of the contract and upon the payment of $33,750 for the manufacture of 15 sets of machines, other than the first set of machines. A conveyance of the letters patent, drawings, patterns, etc., from the plaintiff is expressly conditioned upon the payment of the royalty named and the keeping and observing of its covenants by the Syndicate. The right to a conveyance from plaintiff to the defendant rests upon contract.

"The statutes of the United States require that the patent issue upon the application of and in the name of the real inventor, although he was employed and paid to make it for the benefit of the one employing him. In such case the employer may be entitled to the ownership of the patent, and may compel its transfer by assignment; but this depends upon the nature of the agreement between them. A company that employs a skilled workman to make improvements on its machinery is not entitled to a conveyance of the patents secured by the workman on improvements so made, in the absence of agreement to that effect." 30 Cyc. 880.

"But a manufacturing corporation, which has employed a skilled workman for a stated compensation to take charge of his works and to devote his time and services devising and making improvements in articles there manufactured, is not entitled to a conveyance of patents obtained for inventions made by him while so employed, in the absence of express agreement to that effect." Dalzell v. Dueber Mfg. Co., 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749; Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. 193, 30 L. Ed. 369.

Defendants cannot demand the fruits of a contract without assuming the burdens.

[4] I do not think that there is any force in the contention that plaintiff in this case has mistaken his remedy. Section 57 of the Judicial Code removes the objection of the defendants that the court has no jurisdiction to entertain this action to remove the cloud upon the title to personal property. This is likewise recognized by Simpkins, Federal Suits in Equity, (2d Ed.) p. 342. Other cases sustaining this conclusion are Jellenik v. Huron Copper Mining Co., 177 U. S. page 1, 20 Sup. Ct. 559, 44 L. Ed. 647; Citizens' Saving & Trust Co. v. Ill. Cen. Ry. Co., 205 U. S. page 46, 27 Sup. Ct. 425, 51 L. Ed. 703; Magnuson v. Clithero, 101 Wis. 551, 77 N. W. 882; Martin & Earl v. Maxwell, 86 S. C. 1, 67 S. E. 962, 138 Am. St. Rep. 1012; Blair v. Chicago, 201 U. S. 400, 26 Sup. Ct. 427, 50 L. Ed. 801. A court of "equity has jurisdiction to remove a cloud from the title to a patent, where that cloud consists in an express or implied assertion of adverse ownership or encumbrance." Walker on Patents (4th Ed.) § 295.

I think a decree should be entered in this case in favor of the plaintiff and against the defendants as prayed for, except as to the first set of machines in the possession of the plaintiff, which should be decreed in the defendants, subject, however, to the lien of the plaintiff upon said machines in the sum of $1,359.02 remaining unpaid on the "factory account," and which the defendants agreed to pay, less $51.53.