**STANDARD STOKER CO., Inc., v. LOWER et al.**

**No. 1771.**

District Court, D. Maryland.

Jan. 6, 1931.

Semmes, Bowen & Semmes, Frederick W. Brune, and Edwin F. A. Morgan, all of Baltimore, Md., and Whitman, Ransom, Coulson & Goetz, of New York City, for complainant.

Brown & Critchlow, of Pittsburgh, Pa., and August A. Denhard, of Baltimore, Md., for defendants.

WILLIAM C. COLEMAN, District Judge.

The questions here at issue arise upon three motions to dismiss the bill of complaint, a separate motion being filed by each of the three defendants, appearing specially for the purpose of these motions only. Complainant has also filed a motion to be allowed to bring one of the defendants, Ketchpel, within the jurisdiction of the court by substituted process, pursuant to the provisions of section 57 of the Judicial Code (28 USCA § 118).

A number of distinct questions of venue are presented by the three motions which will be hereinafter separately considered. In order that these questions may be fully understood, it is necessary first to summarize the allegations of the rather lengthy bill of complaint. These may be summarized as follows: The complainant is a Delaware corporation engaged in the business of manufacturing and selling locomotive stokers and fuel conveyors, with its principal place of business in Erie, Pa. Defendant Lower is a citizen and resident of the state of Maryland. Defendant Ketchpel is a citizen and resident of the state of Pennsylvania, and the third defendant, the Lower Stoker Company, is a Pennsylvania corporation having offices and

being engaged in business similar to that of complainant, in both Pennsylvania and Maryland. Both defendant Lower and Ketchpel were employed, for a number of years, by the Locomotive Stoker Company, a Pennsylvania corporation, which was engaged in the same kind of business. The duties of these defendants were primarily to develop the Locomotive Stoker Company's inventions and to initiate and prosecute, for the benefit of that company, applications for patents upon inventions made by the company's employees. Pursuant to contracts (not claimed to be in writing) between them and the company, any inventions which they might make· while in the company's employment became the property of the company, and they obligated themselves to obtain patents thereon whenever possible and to vest the ownership of such patents in the company. In February, 1928, the company assigned to the complainant all its right, title, and interest in all inventions relating to stokers made by these two defendants while employed by the company, both defendants being fully advised of this assignment. At the same time they both entered the employment of the complainant, where Ketchpel continued until March 15, 1928, and Lower until May 31, 1928. Upon his resignation, Ketchpel became an employee of Lower, even while Lower was still working for the complainant. On June 22, 1928, defendant Ketchpel filed an application for a patent upon an alleged invention in locomotive stokers which forms the basis of the present suit. This application Ketchpel immediately assigned ·to Lower. The original written assignment is now in the possession of defendant Lower in Maryland. Defendant Ketchpel admits that his alleged invention was first conceived by him while he was employed by the Locomotive Stoker Company, as evidenced by his sworn statement which forms part of the record in an interference proceeding in the Patent Office, between his application and a patent held by the complainant, as assignee of the Locomotive Stoker Company.

At or about the time that Ketchpel made the aforesaid assignment, defendant Lower organized the Lower Stoker Company for the purpose of manufacturing and selling stokers, made in accordance with the alleged invention covered by the application which Ketchpel had assigned to him. A number of these stokers were manufactured ·and sold to potential customers of complainant, the latter having no knowledge of the date when Ketchpel first· conceived his alleged invention, until November 22, 1929, after which complainant negotiated with defendant Low-

er for the restoration of its rights to the alleged invention in controversy, but settlement was not reached and the present suit· was filed. The complainant further alleges that both defendant Lower and Ketchpel practiced deception by their concealment of the alleged invention from the Locomotive Stoker Company and its assignee, the complainant, and were otherwise fraudulent with respect ·to their use and development of this ·alleged invention.

The specific relief prayed for in the bill of complaint may be summarized as follows: (1) A decree that complainant is the sole owner of the alleged invention and application; (2) that all three of the defendants be required to release any interest therein to complainant; (3) that they be required to account to complainant for all profits which they may have derived from the alleged invention and application, and also to account in damages for such injury as complainant may have suffered by virtue of their wrongful manufacture and sale of stokers under the alleged invention and application; and (4) injunctive relief against all the defendants with respect to manufacturing, selling, or otherwise· dealing in stokers designed in accordance with the alleged invention and application.

Taking up, first, defendant Ketchpel's motion to dismiss the bill of complaint, that motion is based upon the ground that, since he is a resident of Pittsburgh, Pa., and since plaintiff is a Delaware corporation, this court has· no jurisdiction over him in the present suit, because, being founded solely on the fact that it is an action between citizens of different states, it is not brought in the district of the residence of either the plaintiff or the defendant, as it must be, according to section 51 of the Judicial Code (28 USCA § 112) the pertinent provision of which is as follows: " * * * Where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." But complainant contends, through its own special motion, that jurisdiction attaches by reason of substituted service having been obtained upon Ketchpel according to the provisions of section 57 of the Judicial Code (28 USCA § 118), which are as follows: "When in any suit commenced in any district court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien ˙or cloud upon the title to real or personal property within the district where such suit is brought, one or

more of the defendants therein shall not be an inhabitant of or found within the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks. * * * "

▮ The court concludes, for the following reasons, that the motion of defendant Ketchpel must be granted and complainant's motion must be dismissed. Section 57 of the Judicial Code is not applicable to the present situation. The express language of that section requires as a condition precedent to its being invoked that there shall be "real or personal property within the district where such suit is brought." A patent does not give to the patentee anything more than an intangible property interest, namely, the right to exclude others from the use of the patent. Motion Picture Co. v. Universal Film Co., 243 U. S. 502, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959; Bloomer v. McQuewan, 14 How. 539, 548, 14 L. Ed. 532; Paper Bag Patent Cases, 210 U. S. 405, 424, 28 S. Ct. 748, 52 L. Ed. 1122. This principle is well settled, although the Supreme Court has said, in a recent case, that, for state tax purposes, a patent is vested with the indicia of a federal instrumentality. Long v. Rockwood, 277 U. S. 142, 48 S. Ct. 463, 72 L. Ed. 824. Since the above be true regarding a patent, a fortiori it is true with respect to a mere application for a patent. In short, neither the application nor the patent itself can be said to represent more than an intangible property right. The fact that by successive partial assignments various assignees might have relative rights in a number of jurisdictions is itself proof that, for the purpose of the present suit, the application in question is not to be considered as a res with its definite situs in Maryland, the residence of the present assignee, Lower.

That section 57 of the Judicial Code may not be invoked against defendant Ketchpel is affirmed by the decided weight of authority. The earliest case, decided in 1890, is Non-Magnetic Watch Co. v. Association, etc., 44

F. 6, a decision by Judge Lacombe sitting in the Circuit Court for the Southern District of New York. There the precise question here presented was at issue, and the court said (pages 6 and 7 of 44 F.):

"This is an application for an order directing service of process upon the defendant, a Swiss corporation, by publication. The petition states that the suit is brought to remove a cloud upon 'the title to certain letters patent' which it is claimed are the property of the complainant corporation, or rather of its receiver, and which 'original letters patent, the subject-matter involved in this suit, are in possession of (such receiver).' This statement is not technically accurate. What the suit is concerned with is the title to the patent itself,—to the patent-right; and the mere custody of the letters evidencing the fact that such patent-right was originally granted to a particular inventor is immaterial.

"The petitioner claims that he is entitled to the relief prayed for, under section 8 of the judiciary act of 1875, which provides for such service upon non-resident defendants when the suit is commenced 'to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon, the title to real or personal property within the district where such suit is brought.' The various cases which were cited by the complainant's counsel interpreting this section are concerned either with real property, or with such tangible personal property as was susceptible of reduction to actual possession. *I cannot satisfy myself that the section covers (or was intended to cover) such incorporeal and intangible property as a patent-right, possession of which must of necessity be ideal, not actual, and which cannot be seized or sold under an execution.* Stephens v. Cady, 14 How. 528 [14 L. Ed. 528]; Stevens v. Gladding, 17 How. 447 [15 L. Ed. 155]. *Statutes which undertake to give to courts jurisdiction over non-residents, who do not come within the district for purposes either of residence or business, should not be enlarged by too liberal construction, and in the absence of authority I must decline to make the order prayed for.*" (Italics inserted.)

This decision was not appealed.

To the same effect is Standard Gas Power Co. of Georgia v. Standard Gas Power Co. of Delaware, 224 F. 990, decided in 1915 by the District Court for the Northern District of Georgia. There the court, after quoting

in full Judge Lacombe's decision, said, page 992 of 224 F.:

"There must, under the act referred to, be 'real or personal property within the district,' and I agree thoroughly with the views expressed by Judge Lacombe that a patent right is not such 'real or personal property' as would come within this language or within this act. *A patent right is something granted by the Patent Office in Washington to an inventor, which 'right' he may sell, transfer, or assign, and over which he has, until he divests himself of such 'right,' exclusive control; but it is not such real or personal property, in my opinion, as was contemplated by this act, such property as the court can seize and act upon as was intended by this law. And the existence of the patent right is coextensive with the limits of the United States. I do not know that it has a situs anywhere, even if it were of such character as would justify the court in treating it as property under the act in question.*

"I am compelled to hold, therefore, that there was no basis here for entertaining this suit under section 8 of the act of Congress of March 3, 1875 (Judicial Code, § 57). Consequently service by publication was insufficient for the purpose of bringing the defendants into court." (Italics inserted.)

This case also was not appealed.

The same principle underlies the recent decision of the Sixth Circuit in Automotive Products Corp. v. Wolverine B. & S. Co. (C. C. A.) 15 F.(2d) 745.

Opposed to the aforegoing authorities we have found only one reported case, Burpee v. Guggenheim, 226 F. 214, from the District Court, State of Washington, Western District, which may definitely be said to have decided this precise question. This was a suit to quiet title to various property, including a number of automatic machines for making paper bottles, and also certain patents which appear to have been in the possession of the plaintiff. The full facts do not clearly appear from the opinion, and presumably jurisdiction may well have been based upon the fact that the tangible property, the machines, were located in the district of defendant's residence. In any event, the following statement is all that the District Judge said upon the precise question (page 220 of 226 F.): "I do not think that there is any force in the contention that plaintiff in this case has mistaken his remedy. Section 57 of the Judicial Code removes the objection of the defendants that the court has no jurisdiction to entertain this action to remove the cloud upon the title

to personal property. This is likewise recognized by Simpkins, Federal Suits in Equity (2d Ed.) p. 342. Other cases sustaining this conclusion are Jellenik v. Huron Copper Mining Co., 177 U. S. page 1, 20 S. Ct. 559, 44 L. Ed. 647; Citizens' Savings & Trust Co. v. Ill. Cent. Ry. Co., 205 U. S. page 46, 27 S. Ct. 425, 51 L. Ed. 703; Magnuson v. Clithero, 101 Wis. 551, 77 N. W. 882; Earle v. Maxwell, 86 S. C. 1, 67 S. E. 962, 138 Am. St. Rep. 1012; Blair v. Chicago, 201 U. S. 400, 26 S. Ct. 427, 50 L. Ed. 801. A court of 'equity has jurisdiction to remove a cloud from the title to a patent, where that cloud consists in an express or implied assertion of adverse ownership or encumbrance.' Walker on Patents (4th Ed.) § 295." No appeal of this case is reported.

None of the cases cited in the aforegoing opinion are apposite to the precise point here involved. It is significant that the court does not refer to Judge Lacombe's decision in the Non-Magnetic Watch Company Case, supra, which had been decided twenty-five years previously, and was available in the reports.

Complainant refers to the last paragraph of Equity Rule 8 (28 USCA § 723), and asserts that, since, by virtue of that rule, the court may compel defendant Lower to convey to complainant his interest in the alleged invention and application, (a point to be hereinafter determined), it is anomalous to say that there is no res within the district for him to convey. But this is merely begging the question. Rule 8 determines what may be done after general equity jurisdiction in personam has been established and exercised, and does not purport to remove the basic condition imposed upon its exercise when the jurisdiction is solely quasi in rem, namely, that the res sought to be affected shall actually be within the district, the burden of proving which fact is upon the complainant. Chase v. Wetzlar, 225 U. S. 79, 32 S. Ct. 659, 56 L. Ed. 990. In the present instance complainant has not met this burden.

Coming next to the motion of the Lower Stoker Company, defendant, that motion is based upon the same ground as the motion of defendant Ketchpel, namely, that since the jurisdiction of the present action must rest solely on the fact that it is one between citizens of different States, pursuant to the requirement of section 51 of the Judicial Code (28 USCA § 112), suit can be brought only in the district of the residence of either the plaintiff or defendant, and this has not been done, because neither plaintiff nor defendant can legally be said to reside in Maryland, the

former being a Delaware corporation, and the latter a Pennsylvania corporation.

 The court concludes that this motion must also be granted for the following reasons. Diversity of citizenship between the parties is clear, because, for purposes of diversity of citizenship under section 24(1) of the Judicial Code (28 USCA § 41(1), a corporation is a citizen of the state in which it is incorporated. Empire Coal & Transp. Co. v. Empire Coal & Mining Co., 150 U. S. 159, 14 S. Ct. 66, 37 L. Ed. 1037. Thus the question is one not of jurisdiction, which is undisputed, but of venue, and is governed by section 51 of the Judicial Code hereinbefore quoted. Jurisdiction and venue are not to be confused. The former connotes the power to decide a case upon the merits; the latter connotes locality—the place where the suit should be heard. Interior Construction & Improvement Co. v. Gibney, 160 U. S. 217, 16 S. Ct. 272, 40 L. Ed. 401; The Resolute, 168 U. S. 437, 18 S. Ct. 112, 42 L. Ed. 533. Therefore, since the present suit has not been brought in the district of the residence of the plaintiff, it becomes necessary to determine whether the defendant corporation, although not incorporated in Maryland, may nevertheless be said to reside there within the meaning of section 51. Plaintiff contends that this question must be answered in the affirmative, by reason of the fact that defendant, by complying with section 119 of article 23 of the Maryland Code, has constituted itself a resident of the state of Maryland, and has thereby waived any right which it might have had to object to being sued in Maryland. The pertinent part of that section is as follows: "Every foreign corporation, * * * which has an office or place of business in this State * * * shall, before doing business therein, file with the State Tax Commission of Maryland: * - * (e) The name and address of its agent resident in this State, service of process upon whom shall bind the corporation until the appointment of a substitute is duly certified to the State Tax Commission. The State Tax Commission shall preserve and maintain a record book wherein shall be annually recorded the name of the corporation; its main office in this State; the amount of its capital employed in this State as determined by the State Tax Commission; the amount of tax entered on the capital employed in this State; and the name and address of the resident agent on whom service of process may be made. At the time of original qualification and filing of the original papers required by this section, every such foreign corporation shall pay to the State Tax Commission, for the use of the State, a fee of twenty-five dollars, upon receipt of which the Secretary of the State Tax Commission shall issue to it a certificate setting forth that it is entitled to do business in this State under the laws thereof, and for all fees collected the State Tax Commission shall account quarterly to the Comptroller and pay the same forthwith to the State Treasurer for the use of the State. Foreign corporations required to register and report under the provisions of this section shall not be obliged to file a certificate of the appointment of a resident agent or agents with the Secretary of State."

 It is well settled that, for the purposes of section 51 of the Judicial Code, "citizen," "inhabitant," and "resident" are synonymous terms, and that therefore a corporation is a resident only of the state of its incorporation, and of the district (when that state comprises more than one district) of the corporation's head office. Shaw v. Quincy Mining Co., 145 U. S. 447, 12 S. Ct. 935, 36 L. Ed. 768; In re Keasbey & Mattison Co., 160 U. S. 221, 16 S. Ct. 273, 40 L. Ed. 402.

█ While venue, unlike jurisdiction, is a matter of personal privilege which a defendant may insist upon if done seasonably, or may waive expressly or impliedly, Commercial Co. v. Consolidated Co., 278 U. S. 177, 49 S. Ct. 98, 73 L. Ed. 252; Senitha v. Robertson, Commissioner, 45 F.(2d) 51, decided by the Circuit Court of Appeals, Fourth Circuit, November 17, 1930, we nevertheless conclude that plaintiff's position is untenable, because in Southern Pacific Co. v. Denton, 146 U. S. 202, 13 S. Ct. 44, 36 L. Ed. 942, the point has been decided contrary to plaintiff's position. There the plaintiff was a citizen of Texas and a resident of the eastern district thereof. Defendant was a Kentucky corporation doing business in the western district of Texas, with an agent in that district qualified under the state law to accept service of process. The suit was brought in the United States Circuit Court for the western district of Texas. The Supreme Court held that the Circuit Court had not acquired jurisdiction, since the corporation was not a citizen or resident of the state of Texas because not incorporated there, and because there had been no waiver of its right to object by general appearance or otherwise. The form of the Texas statute and the effect given to it in the Denton Case is adequately stated in the following quotation from that

opinion (pages 206–210 of 146 U. S., 13 S. Ct. 44, 46):

"The case at bar is not affected by either of the statutes of Texas on which the counsel for the defendant in error relies. He contends that the plaintiff in error had consented to be sued in the western district of Texas by doing business and appointing an agent there under the statute of Texas of 1887, c. 128, requiring a foreign corporation, desiring to transact business in the state, 'to file with the secretary of state a certified copy of its articles of incorporation, duly attested, accompanied by a resolution of its board of directors or stockholders, authorizing the filing thereof, and also authorizing service of process to be made upon any of its officers or agents in this state engaged in transacting its business, and requesting the issuance to such corporation of a permit to transact business in this state, said application to contain a stipulation that said permit shall be subject to each of the provisions of this act,' one of which was that any foreign corporation sued in a court of the state, which should remove the case into a court of the United States held within the state, 'for the cause that such corporation is a nonresident of this state or a resident of another state from that of the adverse party, or of local prejudice against such corporation, shall thereupon forfeit and render null and void any permit issued or granted to such corporation to transact business in this state.' Gen. Laws Tex. 1887, pp. 116, 117.

"But that statute requiring the corporation, as a condition precedent to obtaining a permit to do business within the state, to surrender a right and privilege secured to it by the constitution and laws of the United States, was unconstitutional and void, and could give no validity or effect to any agreement or action of the corporation in obedience to its provisions. Insurance Co. v. Morse, 20 Wall. 445 [22 L. Ed. 365]; Barron v. Burnside, 121 U. S. 186, 7 S. Ct. 931 [30 L. Ed. 915]; Texas Land Co. v. Worsham, 76 Tex. 556, 13 S. W. 384. *Moreover, the supposed agreement of the corporation went no further than to stipulate that process might be served on any officer or agent engaged in its business within the state. It did not undertake to declare the corporation to be a citizen of the state, nor (except by the vain attempt to prevent removals into the national courts) to alter the jurisdiction of any court as defined by law.* The agreement, if valid, might subject the corporation, after due service on its agent, to the jurisdiction of any appropriate court of the state. Lafay-

ette Ins. Co. v. French, 18 How. 404 [15 L. Ed. 451]. It might likewise have subjected the corporation to the jurisdiction of a circuit court of the United States held within the state, so long as the judiciary acts of the United States allowed it to be sued in the district in which it was found. Ex parte Schollenberger, 96 U. S. 369 [24 L. Ed. 853]; New England Ins. Co. v. Woodworth, 111 U. S. 138, 4 S. Ct. 364 [28 L. Ed. 379]; In re Louisville Underwriters, 134 U. S. 488, 10 S. Ct. 587 [33 L. Ed. 991]. *But such an agreement could not, since congress (as held in Shaw v. Quincy Mining Co., above cited) has made citizenship of the state, with residence in the district, the sole test of jurisdiction in this class of cases, estop the corporation to set up noncompliance with that test, when sued in a circuit court of the United States.* * * *

"*The acts of congress, prescribing in what districts suits between citizens or corporations of different states shall be brought, manifest the intention of congress that such suits shall be brought and tried in such a district only, and that no person or corporation shall be compelled to answer to such a suit in any other district.* Congress cannot have intended that it should be within the power of a state by its statutes to prevent a defendant, sued in a circuit court of the United States in a district in which congress has said that he shall not be compelled to answer, from obtaining a determination of that matter by that court in the first instance, and by this court on writ of error. To conform to such statutes of a state would 'unwisely incumber the administration of the law,' as well as 'tend to defeat the ends of justice,' in the national tribunals. The necessary conclusion is that the provisions referred to, in the practice act of the state of Texas, have no application to actions in the courts of the United States." (Italics inserted.)

Plaintiff attempts to distinguish this case on the ground that the Maryland statute provides that service of process upon the corporation's designated resident agent within the state "shall bind the corporation." But these words can have no more force and effect than that the corporation, by such appointment, agrees that service upon such agent shall be valid. Under no construction can it be said to amount to a declaration that the corporation is thereby a citizen of the state of Maryland, and, even if such were true, such a declaration would be invalid and of no effect in view of the reasoning of the decision of the Supreme Court in the Denton Case.

Complainant appears to rely largely, if not primarily, upon the case of Ex parte Schollenberger, 96 U. S. 369, 375, 24 L. Ed. 853. As to this decision, it is sufficient to say that it was not only rendered prior to the Denton Case, but it construed section 51 before amended to its present form, that is, when it permitted a defendant to be sued in the district of which he was "an inhabitant, or in which he shall be found." For this reason the Schollenberger decision was distinguished in the Denton Case.

Complainant cites a wealth of other decisions which we consider it unnecessary to refer to, because many of them are clearly not in point, and the others are not controlling because contrary to the Denton Case.

The Supreme Court has never qualified its decision in the Denton Case. That decision is succinctly summarized in the following portion of the opinion of the Supreme Court in Re Keasbey & Mattison Co., 160 U. S. 221, pages 228, 229, 16 S. Ct. 273, 275, 40 L. Ed. 402, decided three years later:

"When the jurisdiction is founded only on the fact that the parties are citizens of different states, the suit shall be brought in the district of which either party is an inhabitant. And it is established, by the decisions of this court, that, within the meaning of this act, a corporation cannot be considered a citizen, an inhabitant, or a resident of a state in which it has not been incorporated; and, consequently, that a corporation incorporated in a state of the Union cannot be compelled to answer to a civil suit, at law or in equity, in a circuit court of the United States held in another state, even if the corporation has a usual place of business in that state. McCormick Co. v. Walthers, 134 U. S. 41, 43, 10 S. Ct. 485 [33 L. Ed. 833]; Shaw v. Quincy Mining Co., 145 U. S. 444, 12 S. Ct. 935 [36 L. Ed. 768]; Southern Pacific Co. v. Denton, 146 U. S. 202, 13 S. Ct. 44 [36 L. Ed. 942]. * * *

"When the parties are citizens of different states, so that the case comes within the general grant of jurisdiction in the first part of the section, the defendant, by entering a general appearance in a suit brought against him in a district of which he is not an inhabitant, waives the right to object that it is brought in the wrong district. Interior Construction Co. v. Gibney, 160 U. S. 217, 16 S. Ct. 272 [40 L. Ed. 401], and cases there cited. But a corporation, by doing business or appointing a general agent in a district other than that in which it is created, does not waive its right, if seasonably availed of, to

insist that the suit should have been brought in the latter district. Shaw v. Quincy Mining Co., and Southern Pacific Co. v. Denton, above cited."

See, also, Beech-Nut Packing Co. v. Lorillard Co. (D. C.) 287 F. 271, and cases therein cited.

Turning lastly to the motion of defendant Lower, summarized, it is to the effect that, since the bill of complaint alleges a breach of contract by defendant Ketchpel, therefore, he is an indispensable party, and since he, being a citizen and resident of the state of Pennsylvania, is not suable in this court in this case without his consent, which he has declined to give, and appears only specially for the purposes of his motion, the present suit cannot proceed without him.

Stated in somewhat different language, defendant Lower's contention is that, since the present suit is founded upon a contract alleged to have been made between defendant Ketchpel and the Locomotive Stoker Company, and since the bill of complaint is, in effect, one for specific performance of that contract, Ketchpel is an indispensable party to the suit; that, although the bill is only directed to one alleged invention and application, a decree would unavoidably affect Ketchpel's right to any and all other inventions that he may have made or conceived during his employment by the Locomotive Stoker Company; that the court is being asked to determine, in Ketchpel's absence, the basic question of whether or not he had entered into the contract, and, if so, whether it was valid, and whether he had been guilty of conspiracy and fraud to deprive the complainant of its rights to this particular alleged invention and all other inventions relative to the locomotive stoker art which he may have made or conceived during the period of some eight years.

On the other hand, complainant contends that Ketchpel is not an indispensable party for the following reasons: (1) Since, on a motion to dismiss, the averments of the bill must be taken as admitted, Ketchpel did not retain any interest in the alleged invention and application, and, therefore, a decree against Lower could not prejudice Ketchpel; (2) since both Ketchpel and Lower acted in willful disregard of complainant's rights under its assignment of the contract between Ketchpel and the Locomotive Stoker Company, they should both be treated as trustees ex maleficio, and as such joint tort-feasors and joint obligors may be sued separately; and, lastly (3), even assuming that Ketchpel's ab-

sence may make it impossible for this court, in the present proceeding, to grant complainant all of the relief asked for, nevertheless part of such relief may and should be given, namely, defendant Lower should be compelled to assign all his right, title, and interest in the alleged invention and application to complainant; should be enjoined from further use of the same, and should be compelled to account for such profits as he has derived therefrom, and to answer in damages to complainant.

The court concludes that defendant Ketchpel is an indispensable party when the relief sought is considered in its entirety, for the following reasons: Equity Rule 39 (28 USCA § 723) provides as follows: "In all cases where it shall appear to the court that persons, who might otherwise be deemed proper parties to the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in its discretion, proceed in the cause without making such persons parties; and in such cases the decree shall be without prejudice to the rights of the absent parties."

A similar provision covering both actions at law and suits in equity, but applying only to parties that cannot be joined because they are out of the court's jurisdiction, is contained in section 50 of the Judicial Code (28 USCA § 111), which reads as follows: "When there are several defendants in any suit at law or in equity, and one or more of them are neither inhabitants of nor found within the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction, and proceed to the trial and adjudication of the suit between the parties who are properly before it; but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process nor voluntarily appearing to answer; and nonjoinder of parties who are not inhabitants of nor found within the district, as aforesaid, shall not constitute matter of abatement or objection to the suit." Neither the above rule nor provision of the Judicial Code is, however, to be taken as permitting the court to grant relief in the absence of parties who are actually indispensable. Waterman v. Canal-Louisiana Bank, 215 U. S. 33, 48, 30 S. Ct. 10, 54 L. Ed. 80; Bogart v. Southern Pacific, 228 U. S. 137, 145, 33 S. Ct. 497, 57 L. Ed. 768. It becomes, therefore, necessary to determine precisely what is meant by an "indispensable party." In the recent case of Halpin v. Savannah River Electric Co., 41 F.(2d) 329, the Circuit Court of Appeals for the Fourth Circuit has clearly classified the three separate groups of parties as follows [pages 330 and 331 of 41 F.(2d)]: "In considering the necessity of joinder, parties group themselves into three classes: (1) Those who are merely proper parties; (2) those who are necessary, or what have been called 'conditionally necessary,' parties; and (3) *those who are indispensable parties.* In the first class are formal parties and those who, while not interested in the controversy between the immediate litigants, have an interest in the subject-matter which may be conveniently settled in the litigation. The absence of such parties is no ground for dismissal. In the second class are those who have an interest in the controversy, but one which is separable from that of the parties before the court and which will not be affected by a decree made in their absence. These should be made parties if possible, in order that there may be a complete determination in one suit of all questions involved. If, however, they are beyond the jurisdiction of the court, or if their joinder would result in ousting the jurisdiction, the court may in its discretion proceed, without their joinder, under Equity Rule 39. *In the third class are those who have an interest in the controversy of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. Unless these are made parties, the court will not entertain the suit.* Shields v. Barrow, 17 How. 130, 139, 15 L. Ed. 158; Barney v. Baltimore, 6 Wall. 280, 284, 18 L. Ed. 825; Williams v. Bankhead, 19 Wall. 563, 571, 22 L. Ed. 184; Niles-Bement-Pond Co. v. Iron Moulders' Union Local No. 68, 254 U. S. 77, 80, 41 S. Ct. 39, 41, 65 L. Ed. 145." (Italics inserted.)

It is clear from the analysis of the bill of complaint, which we have already made, and of the relief asked for, that it is impossible for the court to grant the primary portion of it, without passing upon the effect of the alleged contract between defendant Ketchpel and the Locomotive Stoker Company, because upon that point hinges the answer to the question whether defendant Ketchpel had a right to assign his interest thereunder, as he did, to defendant Lower. Since Ketchpel is not before the court, obviously this basic contract to which he is a party cannot be adjudicated, because he is entitled to an opportunity to be heard and to assert his claim that the con-

tract was void or voidable, or did not forbid assignment, or indeed to make whatever defense he might see fit to make in opposition to the present claim of complainant.

What has just been said is a sufficient answer to complainant's argument that defendant Lower must, in this suit, and in the absence of Ketchpel, be adjudicated a joint tort-feasor with him. In reply to complainant's other argument that, since, on a motion to dismiss, the averments of the bill must be taken as admitted, Ketchpel did not retain any interest in the alleged invention and application for patent, and therefore a decree against Lower could not affect Ketchpel, it is sufficient to point out that the effect of such motion is equivalent to that of a demurrer, and that only allegations of fact, not conclusions of law, are to be taken as true. Scott v. Empire Land Co. (D. C.) 5 F.(2d) 873; Amalgamated Royalty Oil Corp. v. Hemme (C. C. A.) 282 F. 750; Consolidation Coal Co. v. Western Maryland Rwy. Co., 44 F.(2d) 595. Therefore, the admission in the present case must be limited to an admission that Ketchpel made an assignment to Lower, which in terms purported to transfer "all his right, title and interest" to Lower. But such admission is not inconsistent with a later assertion by Ketchpel that he retained some interest in the invention. To assume that the assignment effectively divested him of all interest would be to make a conclusion of law not permissible under a motion such as the present one. But even assuming the contrary to be true, the motion that we here have under consideration is Lower's motion, not Ketchpel's, and therefore an admission by Lower that Ketchpel retained no interest will not suffice to preclude Ketchpel. This is obvious from the very purpose of the rule preventing the court from acting in the absence of an indispensable party; namely, it is framed primarily for the purpose of protecting the interests of such absent party, and not the interests of the party before the court. Nor can the admission made by Ketchpel in his own motion, previously considered and granted, be taken as a determination that he retained no interest in the alleged invention and application, when the court is considering, not his motion, but that of another party. See Illinois Central R. Co. v. Norris (C. C. A.) 245 F. 926, 931.

That defendant Ketchpel is unquestionably an indispensable party in the present suit, when the relief asked is considered in its entirety, is borne out by a large number of cases, most of which it is deemed unnecessary even to cite because the conclusion reached on the facts in the present case seems to be so free from doubt. See especially Mallow v. Hinde, 12 Wheat. 193, 6 L. Ed. 599; Findlay v. Hinde, 1 Pet. 241, 7 L. Ed. 128. The latter case came before the court on a second appeal (Vattier v. Hinde, 7 Pet. 252, 8 L. Ed. 675), in which the decision on the former appeal was reversed, the pleadings having been amended so as to join as one of the defendants an absent grantor, Garrison, a citizen of Illinois, through whom the other defendants had derived legal title to certain land, and whose presence as a party had been held indispensable on the first appeal. On the second hearing Garrison disclaimed all interest in the property in issue, whereupon he was dismissed as a defendant by the trial court, and the case proceeded to a decree for the plaintiff against two of the other defendants. Chief Justice Marshall, in rendering the opinion on the second appeal, held that under the law as it then stood under the original Judiciary Act of 1789, requiring all defendants or all plaintiffs to be citizens of the state where the suit was brought, the joinder of a citizen of Illinois as a defendant in the suit, which was brought in Ohio, and the plaintiffs not being citizens of Ohio, would defeat the jurisdiction of the trial court, and said (page 265 of 7 Pet.): "Had the case on the former hearing appeared as it now appears; had it been then known, as it is now known, that making Garrison a party would turn the plaintiffs out of court, and that he disclaimed all interest in the cause; had these facts appeared in the former record; we think the decree would not have reversed, for the cause assigned for its reversal. We are, therefore, of opinion, that the court committed no error in making their decree between the remaining parties, after the bill had been dismissed as to Abraham Garrison." This statement is stressed by complainant as an argument in favor of its contention that defendant Lower is not an indispensable party, but our interpretation of the opinion as a whole is that the Supreme Court rested its decision largely, if not primarily, upon the fact that the defendant Garrison, originally absent, had later disclaimed all interest in the cause.

In Swan Land & Cattle Co. v. Frank, 148 U. S. 603, 610, 13 S. Ct. 691, 693, 37 L. Ed. 577, the Supreme Court, in holding that corporations are indispensable parties to a bill which affects corporate rights or liabilities, said: "Now, it is too clear to admit of discussion that the various corporations charged

with the fraud which has resulted in damage to the complainant are necessary and indispensable parties to any suit to establish the alleged fraud and to determine the damages arising therefrom. Unless made parties to the proceedings in which these matters are to be passed upon and adjudicated, neither they nor their other stockholders would be concluded by the decree. *The defendants cannot be required to litigate those questions which primarily and directly involve issues with third parties not before the court.*" (Italics inserted.)

For a more recent analysis of the decisions bearing upon this question, see Cobb v. Interstate Mortgage Corp. (C. C. A.) 20 F. (2d) 786. See, also, Halpin v. Savannah River Electric Co., supra.·

█ Although we have thus concluded that defendant Ketchpel is an indispensable party when the complaint and the relief prayed for are viewed in their entire aspect, it does not, however, necessarily follow that this court should dismiss the bill completely, and refuse to grant any relief whatsoever to complainant. On the contrary, the court is of the opinion that the character of the litigation is such that the complainant is entitled to some relief against defendant Lower, albeit he is the only party defendant found to be properly before the court. There is no question but that the court may render a more limited decree than that asked for, if to do so will not affect interests of absent parties, assuming that such parties would be indispensable were the complete relief granted. Waterman v. Canal Louisiana Bank, supra; General Investment Co. v. Lake Shore & M. S. Ry. Co. (C. C. A.) 250 F. 160; New Orleans Waterworks v. New Orleans, 164 U. S. 471, 17 S. Ct. 161, 41 L. Ed. 518; Consolidated Textile Corp. v. Dickey (C. C. A.) 269 F. 942.

The extent of the relief against Lower, as to the granting of which the court considers complainant is now entitled to be heard, is that Lower should be enjoined from disposing in any way of any of the rights to the alleged invention and application, which he may have acquired by reason of the assignment from Ketchpel, and from manufacturing, selling, or otherwise disposing of any of the devices designed thereunder, until Lower's status as assignee shall have been determined by this court after he has had opportunity to file his answer to the bill of complaint and to be heard thereon. Should such latter hearing result in a determination that Lower was an assignee of Ketchpel with notice of the alleged contractual relations between the Locomotive Stoker Company

and Ketchpel and the prior assignment of the latter's rights to the complainant, then complainant shall be entitled to have that part of the temporary injunction, if granted, prohibiting Lower from disposing in any way of any of the rights to the alleged invention and application which he may have acquired by reason of the assignment from Ketchpel, continue for such further time as to afford it reasonable opportunity to bring suit against defendant Ketchpel in the proper jurisdiction, and until by such suit, seasonably brought, complainant shall have a determination of its rights under its assignment from the Locomotive Stoker Company. In such suit Ketchpel cannot be heard to say that Lower is an indispensable party because all that need there be sought is (1) a construction of the basic contract between the Locomotive Stoker Company and Ketchpel to which Lower was not a party; (2) a judgment or decree against Ketchpel which would be conclusive against Lower if he should be found, by this court, to be a mere assignee of Ketchpel with notice of the prior assignment.

If, as a result of the hearing on bill and answer in this court, Lower shall be found to have been an assignee of Ketchpel with notice of the prior assignment to complainant, then, pending a determination of complainant's rights as aforesaid in its suit against Ketchpel in another jurisdiction, Lower, in addition to being enjoined from disposing of any of his rights to the alleged invention and application as heretofore provided, should be required by this court to save the complainant harmless by a good and sufficient bond obligating himself to account to complainant for any profits which he may, pending such determination, derive from the alleged invention and application, including those derived from the manufacture, sale, or other disposition of any of the devices designed thereunder, should the suit between complainant and Ketchpel result in a decree favorable to complainant. Conversely, a bond will also be required of complainant obligating it to reimburse Lower for the cost of the bond required of him in the event complainant shall be unsuccessful in its suit against Ketchpel. In other words, this court will not merely retain jurisdiction over Lower pending the outcome of a hearing upon the merits of his own answer to the bill of complaint, but, pending such hearing, may enjoin him from doing anything which might be prejudicial to complainant and will extend such injunction, if necessary, until Ketchpel's rights, from which Lower's are derived, shall be adjudicated. This form of relief will do equity to all parties and at the same time will permit consum-

mation of the pending litigation in the Patent Office touching the validity of the alleged invention and will not interrupt production and marketing of the devices designed thereunder. Of course complainant's right to a decree against Lower Stoker Company when sued in the proper jurisdiction is conditioned upon complainant first establishing his rights against Lower.

In accordance with the aforegoing opinion, defendant Lower's motion will be overruled, and the preliminary relief as above defined will be decreed. The motions of the other defendants will be granted, and complainant's motion overruled.